† PERRIN *versus* NOYES.

In an action by the indorsee of a promissory note, where it is proved that the note was fraudulently put into circulation, the burden of proof is upon the plaintiff to show, that he came by it fairly in the due course of business, unattended with circumstances justly calculated to awaken suspicion.

ON EXCEPTIONS from *Nisi Prius*, HATHAWAY, J., presiding.

Perrin *v.* Noyes.

Assumpsit, on a promissory note signed by defendant and indorsed by one Samuel L. Hazard. ·

The note came into plaintiff's hands duly indorsed before its maturity and passed through the hands of one Center, a broker in Boston.

There was evidence tending to show, that it was designed for collateral security for paper held by plaintiff against Hazard, which had been paid, and also that it was negotiated unconditionally for value.

If it was negotiated absolutely, it was contended from the evidence that Center had no such authority, and that it was a fraud upon defendant.

The instructions given were, that the note being read without objection, the burden of proof was upon defendant to show why he should not pay it, and if the jury believed the note was made and delivered to Center to be used as collateral security to the note of Hazard, and that he negotiated it for a different purpose unauthorized by the maker and indorser, the defence would not be complete, unless they were also satisfied from the evidence, that the plaintiff, when he took the note, knew that it was to be negotiated only as collateral to the note of Hazard.

Verdict for plaintiff, and defendant excepted.

*Gilbert*, in support of the exceptions, cited *Munroe* v. *Cooper*, 5 Pick. 412; *Aldrich* v. *Warren*, 16 Maine, 465.

*Bronson & Sewall, contra.*

Tenney, J. — It is not disputed, that the note in suit was negotiated, and came into the hands of the plaintiff, before its maturity. But from the evidence reported, it was a point in controversy, whether it was left as collateral security for paper of Samuel L. Hazard, which he afterwards paid to the plaintiff, or whether it was negotiated absolutely, and not for a specific purpose. And if the transfer to the plaintiff was absolute, another question was, whether Center, the broker who made it, was authorized to transfer

the note in that manner, or did it in fraud of the defendant's rights.

The jury were instructed, "that the case having been made out by the note in evidence, the burden of proof was on the defendant, to show why he should not pay it; and if they believed the note was made and delivered to Center, to be used as collateral security of the note of Hazard, and that he negotiated it for a different purpose, unauthorized by the maker and indorser, the defence would not be complete, unless they were also satisfied from the evidence that the plaintiff, when he took the note, knew that it was to be negotiated only as collateral to the note of Hazard." Under these instructions, the defence would fail, upon satisfactory proof of fraud in the transfer of the note, and an entire want of consideration paid by the plaintiff for such transfer.

If fraud is practiced in the inception of a note, or the note is fraudulently put in circulation, the establishment of such facts will throw the burden of proof upon the plaintiff, to show that he came by the possession of the note fairly, in the due course of business, and without any knowledge of the fraud, and unattended with any circumstances, justly calculated to awaken suspicion. The cases cited for the defendant are decisive of this principle. The plaintiff was relieved of this burden of proof, and the instructions were less favorable to the defendant, than the law required.

*Exceptions sustained, verdict set aside,*
*and new trial granted.*