JAMES SULLIVAN *vs.* JAMES H. LANGLEY & others.

Suffolk.   March 17. — June 26, 1876.   AMES & MORTON, JJ., absent.

Where a negotiable promissory note, obtained from the promisor by fraud, has been transferred to a third party before its maturity, the burden of proof is upon him to show that he purchased it for value in good faith; and, to determine this, all the attendant circumstances of the transaction are to be considered.

TORT against James H. Langley for fraudulently inducing the plaintiff to give him the plaintiff's promissory note and an assignment of a savings bank book; and against Jesse F. Alderman and Edgar S. Bristol, partners under the firm name of Alderman & Co., for aiding and abetting therein. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows:

The plaintiff put in evidence tending to show that Langley fraudulently obtained the plaintiff's note for $1000, on three months' time, and the transfer of his bank account, then amounting to $1120, by representing, among other things, that he was the treasurer of the Combination Needle Company, of America, a corporation with a large capital, having warerooms in Boston, in which he would place the plaintiff as overseer, on a salary of $1800 a year, if the plaintiff, in compliance with the rules of the corporation, would pay him $1000 for ten shares of the corporation's preferred stock, paying ten per cent. annual dividends; whereas there was no such business or corporation. The note and assignment were as follows:

"$1000.   Boston, Feb. 11, 1874.   Three months after date I promise to pay to Jas. Henry Langley, or order, one thousand dollars, for value received, I, James Sullivan, having deposited with this obligation as collateral security, with authority to sell the same without notice, either at public or private sale, or otherwise, at the option of the holder or holders hereof, on the nonperformance of this promise, he or they giving me credit for any balance of the net proceeds of such sale remaining after paying all sums due from me to the said holder or holders, or to his or their order, my interest and account in the Boston Five Cents Savings Bank, the same being transferred herewith by my book numbered 27,978.                       James Sullivan."

" To the Treasurer of the Boston Five Cents Savings Bank. Boston, Feb. 11, 1874. For value received, which I hereby acknowledge, I assign to James H. Langley all the moneys due up to this date, on account of deposit book No. 27,978, subject to your by-laws as therein set forth.                    James Sullivan.

" Attest, A. H. Evans."

The plaintiff's evidence also tended to show that Langley agreed with the plaintiff not to transfer to any third party the note and bank account, but he forthwith indorsed the note and assigned the bank account to Alderman & Co., both assignments being the same in form, and being made at the bank ; that Bristol was present at the latter transfer, and heard the bank officer ask Langley if he knew what he was doing, and tell him that this account had been transferred to him only a few hours before, and was then assigned to another party, and that this assignment would authorize Alderman & Co. to draw it at once from the bank, which statement Bristol told to Alderman ; that the plaintiff was introduced to Langley by one Niles, a broker, then having an office opposite to Alderman & Co.'s, on Congress Street, to which office the plaintiff was drawn by an advertisement in the newspaper by Niles, who brought Langley in and introduced him soon after the plaintiff's arrival ; that Niles received a commission of $150 in the transaction between the plaintiff and Langley ; that the plaintiff demanded the note and bank account of Alderman & Co. after the transfer to them, and, in two or three days afterward, demanded of Alderman the note and bank book, and he said he knew nothing about the note, but had the bank book, and refused to give it up or to show it to the plaintiff ; that about April 3 the plaintiff's wife called on Alderman at his office, asked him for her husband's bank book and the note ; he replied that he had the bank book, but not the note, and refused to give her the bank book, or to give her the balance over and above the amount of the note ; that, on the maturity of the note, Bristol asked at the plaintiff's house for the plaintiff, who was absent ; that his wife saw Bristol, who told her that Alderman wished the plaintiff to go to his office and get the balance in bank, so that Langley could not get it ; that their firm were taking such notes every day, and were never caught before. This statement was denied by Bristol.

Alderman testified that his business was the buying and selling of notes; that on February 11, 1874, Niles came to him, asked what he would lend $1000 for, on a note secured by a savings bank book, and said he had a party that was about selling some stock to a person who had the money in a savings bank, but did not want to draw it at that time, because if he did he would lose a dividend; that Niles asked if he would lend $1000 on said security for three months for $50; that Alderman said he would do it for less if it was all right; that Niles then went out, and in a few moments returned with Langley, whom he introduced as the party wishing to borrow the money; that Alderman told Langley he would lend him the money upon the bank book at one per cent. per month and brokerage of one fourth per cent. if he would have the bank book transferred to Alderman & Co.; that immediately upon this conversation Langley went out, and, after a few minutes, returned with the note and bank book, and said the bank account was transferred; that Alderman then examined the bank book and found that, although it was transferred, it was transferred to Langley and not to Alderman & Co.; that Alderman then informed Langley that he should not let him have the money until the bank book and account was transferred to Alderman & Co.; that Langley answered that he would transfer the book if Alderman would send some one to the savings bank with him; that Alderman sent his partner, Bristol, and Langley transferred at the bank the book and account to Alderman & Co., and returned to their office, and there indorsed to them the note; that Alderman & Co. gave Langley their check for $966.50, as payment for the note so secured by the bank book; that the check was paid at the bank of Alderman & Co.; that the transaction occurred between the hours of ten and two, February 11, 1874; and that Alderman & Co. sold the note to one Rindge, in the due course of business on the same day, for some ten dollars more than they paid for it, and indorsed it to him, but retained the bank book in their hands; that Alderman never knew or saw Langley until introduced to him by Niles, and had never seen him or had any transaction with him since; that he had had transactions before that time with Niles, but knew nothing against his character; that he did not usually take notes or securities at a less discount than that offered by the person applying.

Bristol corroborated the testimony of Alderman as to the transaction, and the conversations with Niles and Langley. He denied knowledge of the consideration for which the note was given to Langley, and of Langley's fraud; and testified that his firm took the note and account in the regular course of business; that he went to the bank with Langley to have the book and account transferred, and there heard the words spoken to Langley by the bank officer, as before stated; that this transaction was entered in the book of Alderman & Co., but the cash paid back to Rindge on maturity of the note was entered in a separate memorandum book; that he understood from Niles that Langley had sold some stock or interest in some concern to the plaintiff, and that he did not inquire or know or care what the transaction was. The treasurer of the bank testified, without objection, that by the last assignment the right and title to said account vested in Alderman & Co.; that by the assignment from Sullivan to Langley, Langley obtained all the rights which Sullivan had in the account. Alderman and Bristol both testified that they understood they could draw the bank account at any time after the transfer thereof to them.

When the evidence of both parties was closed, the defendants asked the judge to rule that the plaintiff had not made out a case against them, but the judge refused so to do. The defendants then asked for the following instructions to the jury :

" 1. That the plaintiff must have had the right of immediate possession of the note and bank book at the time of bringing this suit, to entitle him to recover.

" 2. That if the note was indorsed to the defendants underdue by the payee, the burden was upon the plaintiff to show that the defendants did not take it in the due course of business, or that they took it with the knowledge of the plaintiff's equities against the note, or took it under such circumstances as would lead a prudent man to make inquiries about it before taking the same, and that unless he should show one of these circumstances, the fraud of Langley (if any is proved) in obtaining the note and bank book from the plaintiff could not affect the defendants.

" 3. That the wording of the note does not constitute an instrument so far differing from the common form of making notes as to put the defendants on inquiry as to either the consideration or the equities of the note.

" 4. That if the note was taken by the defendants fiom the payee underdue, and in the due course of business, the burden is upon the plaintiff to show that it was taken by them with knowledge of the want of consideration for the note, or taken under such circumstances as should put a prudent man upon inquiry before the want of consideration can affect the defendants.

" 5. That if the note and bank book were negotiable instruments, the form and wording of the note and transfer of the book, as security of the note, are not sufficient to put the party upon inquiry as to any fraud in the transaction between the payee and the payor; that if negotiable, the rule of *caveat emptor* does not apply."

The judge refused to give any of the instructions requested; but instructed the jury as follows : " If Langley obtained from the plaintiff an assignment of the savings bank book by fraud, and it passed immediately afterwards into the possession of Alderman and Bristol, their possession of the bank book would be affected by the fraud of Langley, unless they prove by a preponderance of evidence that they obtained such bank book in good faith, without knowledge or notice of Langley's fraud. The circumstance that Alderman and Bristol had no knowledge of Langley prior to receiving such bank book, or of his business or business schemes, or of any reputation which he had made, likely to excite the suspicions of persons dealing with him, or of any similar facts affecting Niles, who introduced Langley and his business to them ; the disclosures made by Niles and Langley at the time of the negotiation and transaction with them ; the fact that the transaction was in the usual course of business, and the rates of discount were not extraordinary and unusual; are circumstances tending to show good faith on the part of the defendants. Any circumstances of a contrary character, especially any proposal of Niles of a large and unusual discount, in view of the security offered, larger than the defendants were disposed to require; any unusual and extraordinary provisions of the plaintiff's note, and the security offered in connection with it, which would be likely to excite the suspicions of a person of the defendants' experience in business, and to lead to further inquiry, in relation to which the defendants, having the means of such inquiries, wholly neglected to prosecute them   are circum

stances tending to show an absence of good faith, and notice of Langley's fraud. But all the circumstances tending to prove good faith of the defendants, or the contrary, are to be considered in a mass, in order justly to determine their weight as evidence upon the question of good faith."

The judge added, in relation to the character of the note and security, as a circumstance affecting the question of good faith and notice, the following: "That the legal effect of the assignment of the bank book, taken in connection with the language of the note, authorized the defendants to draw all the money from the bank immediately upon the assignment; that, notwithstanding the blank provided that the property should be held until the non-performance, but the writing below describing the property as a savings bank book, the defendants would be entitled to draw all the money at once and hold it until the note was due, and that they might have used it, but must have been ready to pay it over upon the payment of the note by the plaintiff; and this state of the note might be considered by the jury upon the question as to whether the note was so extraordinary and unusual as ought, under the circumstances of its exhibition, to have put the defendants on inquiry before taking the note; and also instructed the jury to find for the plaintiff, and assess damages in the value of said bank book at the date of the writ, provided Langley's fraud was proved, and the defendants failed to show their good faith in receiving such bank book from Langley, with interest on such value from the date of the writ."

Instructions were given, defining and illustrating fraud in the plaintiff's dealing with Langley, in the matter of giving the plaintiff's note and bank book to him, to which no exception was taken by either party. The jury found for the plaintiff; and the defendants alleged exceptions.

*R. Lund & D. E. Richardson*, for the defendants.

*C. H. Hudson & C. Abbott*, for the plaintiff.

DEVENS, J. Whether the note, which, together with a bank book, was sought to be recovered, was a negotiable promissory note, as contended by the defendants, need not here be discussed. While the court did not expressly rule that it was so, the instructions treated it as such, and applied the principles which govern in reference to the transfer of such securities.

There was ample evidence that the note and bank book were obtained by the fraud of Langley, and were fraudulently transferred by him through Niles to the defendants. Upon proof of this, even if the note were a negotiable promissory note, it was for the defendants to show that they took it in good faith for value before its maturity. The circumstances under which they took it, whether suspicious or otherwise, are of importance only as they bear upon this question. *Smith* v. *Livingston*, 111 Mass. 342, and cases cited. The fact, if shown, that the defendants took the note in the ordinary course of business and that the rate of discount was not unusual, was not, therefore, proof that they acted in good faith, but evidence only tending to prove it.

Nor do the instructions assume that any circumstances exist which are suspicious, but fairly submit the character of them to the consideration of the jury. It appeared that the note was upon time, and contained a stipulation that if not paid at maturity the promisee might sell without notice the promisor's interest and account in the Boston Five Cents Savings Bank. Accompanying this was the bank book, which itself contained a written assignment of all moneys due thereon to Langley, the promisee in the note. There was due on the bank book some two hundred dollars more than the amount of the note. By a transfer of the bank account to Langley, and then by Langley to themselves, the defendants were enabled at once, on purchasing the note, to place themselves, as they did, in a position to draw the money of the plaintiff before the maturity of his note. That the form of the note in connection with the security was unusual, and had some tendency to inform the purchaser that the note and security were transferred in fraud or violation of some agreement, might easily be maintained. The court only ruled, however, that if the rate of interest was unusual, or if the provisions of the note were extraordinary and unusual in view of the security offered, these would constitute circumstances bearing upon the question of the good faith of the defendants. Whether such circumstances existed, and what force should be given to them, was fairly submitted to the jury, who were instructed that all the circumstances tending to prove good faith on the part of the defendants, or the contrary, were to be considered together in order justly to determine their weight as evidence.

The defendants contend that, upon the whole case, the court should have ruled that there was not sufficient evidence to enable the plaintiff to recover, but this it could not have done. When there was evidence of the fraud and fraudulent transfer of the· note and bank book by Langley, it was then for the defendants to show that they were not affected by this fraud by sufficient evidence that they had purchased the note for value in good faith before its maturity.                    *Exceptions overruled.*