R. W. McNight, Appellee, v. H. D. Parsons, Appellant.

**Negotiable instruments:** *bona fide* PURCHASER. Knowledge that a note was given in consideration of an executory agreement of the payee, which has not been performed, will not deprive an indorsee ·of the character of, a *bona fide* holder, unless he also has notice of the breach of that agreement.

**Same:** CONSIDERATION. A bank receiving negotiable paper in consideration of credit on its books, which credit is not absorbed by an antecedent indebtedness or exhausted by subsequent withdrawals, is not a purchaser in due course of business.

**Same:** PAROL EVIDENCE: VARIANCE OF WRITING: *bona fide* PURCHASER: BURDEN OF PROOF. Parol evidence is admissible to show that a negotiable instrument, a complete contract in itself, was not to become enforcible until the performance of some condition precedent by the obligee; and when put in circulation in violation of the agreement it becomes incumbent on the indorsee to show that he is a *bona fide* holder.

*Bona fide* **holder:** EVIDENCE: SUBMISSION OF ISSUE. In an action by the indorsee of a note, in which the evidence is such as to cast upon him the burden of showing that he is a *bona fide* purchaser, a verdict should not be directed for plaintiff, unless the evidence of his good faith is of such clear and undisputed character that no question is left for the jury.

**Same.** Where a bank is the indorsee of a promissory note tainted with fraud in its inception, or put in circulation in violation of a condition precedent, the testimony of the cashier to the good faith of the purchase is not alone sufficient to justify the court in disposing of the question as a matter of law and directing a verdict against the maker.

**Same:** NOTICE OF INFIRMITY: SUBMISSION OF ISSUE: EVIDENCE. Notice or knowledge of an infirmity existing in a negotiable instrument which will invalidate it in the hands of an indorsee must be actual, or of such facts that his action in taking it amounts to bad faith; and where the facts shown have any tendency to show bad faith the question is one of fact. Evidence held to require a submission of the issue.

*Appeal from Iowa District Court.*— Hon. O. A. Byington, Judge.

Tuesday, November 19, 1907.

Action at law upon a promissory note. From a judgment for plaintiff on a directed verdict, the defendant appeals.— *Reversed.*

*McElroy & Cox, E. J. Salmon,* and *J. B. Murphy,* for appellant.

*Popham & Havner,* for appellee.

Weaver, C. J.— The note in suit, which is negotiable in form, was made and delivered to C. C. Bigler & Sons, who transferred the same by indorsement to the Farmers' Bank of Victor, Iowa, which, in turn, indorsed and transferred it to the plaintiff. The answer of the defendant is, in substance, that the note was given by him to Bigler & Sons for the purchase price of a certain thoroughbred cow upon a warranty and representation that the animal was a breeder, and upon a further agreement by Bigler & Sons that they would retain possession of her for several months, breed her to a certain named bull, and deliver her when with calf to the defendant. He further alleges that said warranty and representations were untrue, that the cow when delivered to him was not with calf, and was not a breeder, and therefore comparatively worthless. He also pleads that he delivered the note to Bigler & Sons under an agreement that said instrument would not be negotiated by them, but retained in their possession until it was ascertained whether the cow was with calf, and, in case she failed so to be, the note was to be void and of no effect, and returned to the defendant. Defendant also denies that plaintiff is a holder of the note in good faith and without notice of his defense thereto. The fact that the note was given for a cow that was warranted to be a breeder, and that it was thereafter to be bred and delivered, in calf, to the defendant and that this warranty

was broken and the agreement was not performed, is shown without substantial controversy. The one question presented by this record is whether the plaintiff is a good-faith holder of the paper against whom the defense is not available. As this question may involve both the first indorsement to the Farmers' Bank and the subsequent indorsement to the plaintiff, we will consider them in their order.

I. The evidence tends to show that the Farmers' Bank, which was the first indorsee, had notice of the consideration of the note and of the warranty or representation made by Bigler & Sons, breach of which is pleaded in the answer, and this knowledge the appellant insists was such notice as puts the indorsee upon inquiry, and deprives him of the character of a *bona fide* holder. The proposition here contended for is opposed to the decided current of authority. The courts quite universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee which has not been performed will not deprive the indorsee of the character of a *bona fide* holder, unless he also has notice of the breach of that agreement or contract. See 1 Edwards, Bills & Notes, section 519; 1 Daniel, Neg. Inst. 740–748; *Rublee v. Davis,* 33 Neb. 783 (51 N. W. 135, 29 Am. St. Rep. 509); *Miller v. Finley,* 26 Mich. 249 (12 Am. Rep. 306); *Porter v. Steel Co.,* 122 U. S. 267 (7 Sup. Ct. 1206, 30 L. Ed. 1210); 2 Randolph's Commercial Paper, sections 1018–1019. The case made by the defendant lacks in this respect the element of notice to the indorsee of the breach of the warranty or failure of consideration, and the bank must be held to have received the note in good faith, unless its position be found vulnerable to some of the other objections made.

1. NEGOTIABLE INSTRUMENTS: *bona fide* purchaser.

II. The good faith of the indorsement of the bank is also challenged, on the ground that it does not appear to have become an indorsee or purchaser in due course of business. This objection is grounded on the fact that the cashier,

while testifying that the bank purchased and paid for the
note, says that the so-called payment therefor
was effected by giving Bigler & Sons credit
on the books of the bank.   He further says that, to the best
of his recollection, the account of Bigler & Sons was not then
or at any time thereafter overdrawn, and there is no show-
ing or suggestion that such credit was ever canceled by with-
drawals or applied by the bank to the payment of claims in
its hands against Bigler & Sons.   In this condition of the
record, it is very clear that such transaction did not con-
stitute the bank an innocent holder in due course of busi-
ness, unless its claim is strengthened or improved by another
fact about to be stated.   *Bank v. Green,* 130 Iowa, 384;
*Bank v. Huver,* 114 Pa. 216 (6 Atl. 141); *Bank v. Newell,*
71 Wis. 309 (37 N. W. 420); *Mann v. Bank,* 30 Kan. 412
(1 Pac. 579); *Bank v. Blue,* 110 Mich. 31 (67 N. W.
1105, 64 Am. St. Rep. 327); *Bank v. Valentine,* 18 Hun
(N. Y.), 417; *Thompson v. Bank,* 150 U. S. 231 (14 Sup.
Ct. 94, 37 L. Ed. 1063); *Bank v. Nelson,* 105 Ala. 180
(16 South. 707); *Scott v. Bank,* 23 N. Y. 289.

*2. Same: consideration.*

The doctrine of these cases is that the transfer of ne-
gotiable paper to a bank in consideration of credit upon
its books, which credit is not absorbed by an antecedent in-
debtedness or exhausted by subsequent withdrawals, is not a
purchase in the ordinary sense of the term.   To avoid the ap-
plication of this rule in the case at bar, reliance is had on the
conceded fact that after this transaction, and before the be-
ginning of this suit, Bigler & Sons were adjudged bankrupts,
and it is said we must therefore presume that the credit of
said firm on the books of the bank was exhausted, and the
bank's status as a purchaser in due course thus perfected.
Whether this presumption obtains is a question upon which,
if necessary to the disposition of the appeal, the members of
this court might not be fully agreed, but, for reasons here-
inafter shown, we need not now undertake to pass upon it.

III.   Appellant argues that the note in suit having

been delivered upon the condition that it was not to be negotiated, and to be of no effect if the payee failed to deliver the cow in calf as agreed, the act of the payee in negotiating and putting the note in circulation was such a fraud upon defendant as casts upon the plaintiff the burden of showing that he received the instrument in good faith and without notice. This point is met by the appellee with the contention that proof of the matter alleged by appellant must be excluded under the rule prohibiting the admission of parol evidence to vary the terms of a written contract. The soundness of the latter rule thus appealed to is elementary, but its application is not to be so extended as to exclude oral testimony to establish failure of consideration or a plea of fraud where the controversy is between the original parties to a note, or between the maker and one who is not a good-faith holder of the instrument. *Marsh v. Chown,* 104 Iowa, 556; *Bank v. Snyder,* 79 Iowa, 191; *Day v. Lown,* 51 Iowa, 366; *Church v. Sweny,* 85 Iowa, 627; *Mfg. Co. v. Gibson,* 73 Iowa, 525; *Humbert v. Larson,* 99 Iowa, 275. As between such parties, it is also a well-established general rule that the delivery of a written instrument which is in form a complete contract will not exclude parol evidence that such delivery was conditional, and was not to become a binding or enforceable obligation upon the maker until the performance or discharge of such condition precedent. See *Cavanagh v. Beer Co.,* 136 Iowa, 236, and *Hinsdale v. McCune,* 135 Iowa, 682; and see also *Sutton v. Weber,* 127 Iowa, 365; *College v. Thomas,* 40 Wis. 661; *Juilliard v. Chaffee,* 92 N. Y. 530; *Seymour v. Cowing,* 40 N. Y. 535; *Burke v. Dulaney,* 153 U. S. 228 (14 Sup. Ct. 816, 38 L. Ed. 698).

It is also held that, if a party to whom the conditional delivery of a written obligation has been made puts it in circulation in violation of that agreement, such act is a fraud, tainting the inception of the instrument, and constitutes a

3. Same:
parol evidence:
variance of writing:
bona fide purchaser:
burden of proof.

good defense to an action thereon by one who is not a *bona fide* holder. *Merchants' Bank v. Luckow,* 37 Minn. 542 (35 N. W. 434). The general rule is ordinarily stated as follows: "Where negotiable paper has been lost, or stolen, or obtained by duress, or procured or put in circulation by fraud, proof of these circumstances may be given against the plaintiff, and, on such proof being given, it is incumbent on the plaintiff to show himself to be a holder *bona fide* and for a valuable consideration." *Cummings v. Thompson,* 18 Minn. 246 (Gil. 288). The reason of this rule is said by the English courts to be found in the presumption that the holder of paper affected in his hands by fraud or illegality would be likely to indorse it away without consideration to some confederate or agent, and it is therefore but just to require one who sues upon it to prove his *bona fides. Fitch v. Jones,* 5 El. & Bl. 238. This reasoning has also had the approval of the courts of this country. In *Perrin v. Noyes,* 39 Me. 384 (63 Am. Dec. 633), it is said that, if the note in suit has been fraudulently put in circulation, the burden is cast upon the plaintiff " to show that he came by the possession fairly in due course of business, and without any knowledge of the fraud and unattended with circumstances justly calculated to awaken suspicion." Mr. Justice Cooley, of Michigan, applied this rule to the plaintiff in an action upon a promissory note put in circulation in violation of an agreement that, if the representations upon which the sale was made proved to be false, the consideration might be returned and the note surrendered. *Conley v. Winsor,* 41 Mich. 253 (2 N. W. 31).

In *Bank v. Morse,* 163 Mass. 384 (40 N. E. 180), we have a case directly in point upon the proposition now being considered. It was there held that, where a note given under an agreement that it should not be negotiated until a certain contingency arose was negotiated in violation of such agreement, this was a sufficient showing of fraud in putting the paper into circulation to require the plaintiff

to show that he took it for value' and in good faith before maturity. Such, also, was the holding in *Bank v. Iron Works,* 159 Mass. 159 (34 N. E. 93). Without further quotation, we may add the following citations, bearing more or less directly on the question: *Farrar v. Mathews,* 37 Iowa, 418; *Graham v. Rummel,* 76 Ark. 140 (88 S. W. 899); *Vosburgh v. Diefendorf,* 119 N. Y. 357 (23 N. E. 801, 16 Am. St. Rep. 836); *Joy v. Diefendorf,* 130 N. Y. 6 (28 N. E. 602, 27 Am. St. Rep. 484); *Sistermans v. Fields,* 9 Gray (Mass.), 331; *Williams v. Huntington,* 68 Md. 590 (13 Atl. 336, 6 Am. St. Rep. 477); *Griswold v. Scott,* 13 Ga. 210; *Barlow v. Fleming,* 6 Atl. 146; *Labbee v. Johnson,* 66 Vt. 234 (28 Atl. 986); *Lyons v. Stills,* 97 Tenn. 514 (37 S. W. 280); *Trumbull v. O'Hara,* 71 Conn. 172 (41 Atl. 546); *Monroe v. Cooper,* 5 Pick. (Mass.), 412; *Smith v. Sac Co.,* 11 Wall. (U. S.), 139 (20 L. Ed. 102) *Stewart v. Lansing,* 104 U. S. 505 (26 L. Ed. 866); *Landauer v. Sioux Falls,* 10 S. D. 205 (72 N. W. 467); *Bank v. Boddicker,* 105 Iowa, 548; *Sullivan v. Langley,* 120 Mass. 437; *Bank v. Holan,* 63 Minn. 525 (65 N. W. 952); 2 Ency. of Evidence, 524, note 48; *Oakland C.' A. v. Lakins,* 126 Iowa, 121, and note to same case in 3 Am. & Eng. Ann. Cas., 560. The rule is held equally applicable whether the delivery be to a third person in escrow or to the payee or obligee. *Ware v. Allen,* 128 U. S. 590 (9 Sup. Ct. 174, 32 L. Ed. 563); *Burke v. Dulaney,* 153 U. S. 234 (14 Sup. Ct. 816, 38 L. Ed. 698).

There is perhaps room to doubt whether the doctrine that the negotiation 'of a promissory note in violation of an agreement by the payee not to do so until certain conditions have been performed is a fraud which casts upon the indorsee the burden of showing the good faith of his possession of the instrument was recognized by this court prior to the passage of our present statute, but whatever may be the fact in this respect legislative enactment has brought the law of the State into harmony with the rule of the cases to which

attention has been called. Code Supp., 1902, sections 3060–a55, 3060–a59. By this statute the title of any person who negotiates an instrument in breach of faith or under circumstances amounting to a fraud is defective, and the burden is cast upon the holder to show that he or some person through whom he claims acquired the paper innocently. *Keegan v. Rock,* 128 Iowa, 39.

IV. It is suggested in argument that, even if the law be as we have here indicated, there was no evidence on which to submit the fact question to the jury. Counsel either misapprehend the record, or fail to make proper application of the rule. Defendant swears that he made the note on the express agreement of Bigler that the latter would retain it and give it back to defendant if the cow was not delivered to him safely with calf. Such an agreement, if established, would, as we have seen under the authorities cited, make the act of Bigler & Sons in putting the note in circulation in violation thereof a fraud upon the defendant. True, such fraud was not necessarily established by the testimony of the defendant, but the value and weight of his testimony in that regard were for the jury, and not for the court. Such being the situation, the burden was upon the plaintiff to show the good faith of the transfer of the note either to himself or to his immediate indorser, the bank. To uphold the ruling of the trial court in directing a verdict for the plaintiff, it must appear that the plaintiff has established the good faith of one or both of these transactions by evidence of such clear and undisputed character that no question of fact was left for the finding of the jury. But this we are not prepared to affirm.

*4. Bona fide HOLDER: evidence: submission of issue.*

The testimony of the cashier of the bank that he or the bank purchased the note for value before maturity, even though he be not disputed by any other witnesses to the transaction, is not necessarily sufficient to enable the court to say as a matter of law that he

*5. Same.*

received it in good faith. Such evidence does not negative notice or knowledge on part of other officers of the bank. Moreover, the bank being an interested party, the credibility of the testimony of the cashier was a matter for the jury to pass upon in the light of all the facts and circumstances surrounding the matter under inquiry. In *Joy v. Diefendorf*, 130 N. Y. 6 (28 N. E. 602, 27 Am. St. Rep. 484), the plaintiff sought by his own evidence to prove the circumstances attesting good faith of his possession of the note; and in *Bank v. Diefendorf*, 123 N. Y. 191 (25 N. E. 402, 10 L. R. A. 676), the bank gave like evidence by its cashier, and it was held in each case that even though undisputed the credibility of such evidence and its sufficiency to satisfy the burden of proof resting upon the plaintiff were matters for the jury, and not a question of law to be disposed of by the court. See, also, *Elwood v. Telegraph Co.*, 45 N. Y. 549 (6 Am. Rep. 140). It follows, therefore, that, so far as plaintiff's case rested on the indorsement of the note from Bigler & Sons to the bank, the motion to direct a verdict was improperly sustained.

Concerning the showing of good faith in the transfer from the bank to the plaintiff, it may be conceded that the general rule of the cases, as well as of our statute (Code

6. SAME: notice of infirmity: submission of issue: evidence.

Supp. 1902, section 3060–a56), is to the effect that the notice which will invalidate a note in the hands of an indorsee is actual knowledge of the infirmity or defect, or of such facts that his action in taking the paper amounts to bad faith. It is equally true that, if the facts shown have any fair tendency to show bad faith, the question remains one of fact, and not of law. It is especially the case where the evidence of fraud is sufficient to put the burden of showing good faith on the holder. Where the taint of fraud once attaches to a written contract, negotiable or otherwise, the law is careful to require every person who seeks to profit by it to show that he comes into court with

clean hands. Speaking to this point, the Supreme Court of Indiana says: " It would be a departure from principle to hold that the maker must prove that the holder had notice of the fraud. Whether he had notice or not is a matter peculiarly within his own knowledge. It needs no more than a bare statement of the proposition that the plaintiff's possession or nonpossession of notice is a matter peculiarly within his own knowledge to establish it to the satisfaction of a candid mind; and, if this proposition be established, then it must follow that proof should come from him, for few rules of law are better settled than that a party whose cause of action or defense rests upon facts peculiarly within his own knowledge must prove those facts." *Giberson v. Jolley,* 120 Ind. 301 (22 N. E. 306). While it is not to be presumed that a witness will testify falsely, yet it may be presumed that the testimony of a party will be more or less colored by his interest or bias, and, generally speaking, where such testimony is offered to overcome an unfavorable presumption of law or evidence, or to satisfy the burden of proof which the law casts upon him, the question as to his credibility and of the weight and effect of his testimony is for the jury.

·The record in this case discloses evidence tending to show that the bank received the note about June 20, 1902, and continued to hold the same until about March 1, 1903. On the latter date, the bank held notes which had been indorsed to it by Bigler & Sons, including the one in suit, amounting to $17,645.63. The plaintiff herein was at that time a resident of Iowa City. He was employed as an assistant manager of a manufacturing company, and was not engaged in the business of buying and selling notes. He had no acquaintance with Bigler & Sons, but had heard of them, and knew that they were then involved in bankruptcy proceedings. It does not appear that he had any acquaintance with the defendant Parsons, or any personal knowledge as to his financial ability. Some time in Feb-

ruary, 1903, the bank, for the conceded purpose of avoiding any defense or set-off against these notes, consulted their attorney, and was advised to transfer or negotiate them. Thereupon they placed the matter in the hands of the attorney for that purpose, and he arranged the transaction with the plaintiff. By the plaintiff and his witnesses the deal is variously designated as a " sale " of the notes, as a " loan " to the plaintiff, and as an " exchange of notes." The notes which were the subject of the deal amounted, as we have already said, to $17,645.63. Plaintiff gave his note for that sum to " A. M. Henderson, Trustee." Henderson was then cashier of the Marengo Savings Bank, of which the attorney was a director, and the deal was entered on the books as a bank transaction. The plaintiff deposited or undertook to deposit as collateral to this note all of the notes which he was professedly purchasing from the Victor Bank. The Marengo Bank did not have the money with which to make such a loan, and the sum was beyond the limit of its legal power to loan, but the attorney undertook to have the necessary money furnished by the Victor Bank, and, upon this understanding, the Marengo Bank then credited the plaintiff with the sum on its books. This credit was at once canceled by plaintiff's check to the Victor Bank for the full amount, which check was then returned to the Marengo Bank in exchange for the note given by plaintiff, indorsed by " Henderson, Trustee," without recourse. The plaintiff himself did not appear at either bank with reference to this transaction until all the terms of the deal had been arranged by the attorney, when he went to the bank at Marengo, and executed the note prepared for his signature. Indeed, we find no testimony showing in express terms or by necessary inference that plaintiff ever saw or had in his possession the note in suit or any of the notes which were the subject of the alleged transfer. No money changed hands in the alleged purchase. Plaintiff's note was for the full amount of the notes he professedly purchased with no

margin of profit therein for himself, except the difference of one per cent. in the rate of interest. In his testimony as a witness he makes no attempt to assert the good faith of his purchase of the notes or to negative the fact that he had notice of any defense thereto. Even had he expressly denied notice or knowledge, yet, taken as a whole, the transaction was of such an extraordinary character and of such elaborate workmanship it is exceedingly difficult to avoid the conclusion that plaintiff occupies no better position than that of a mere agent, or person consenting to act as a voluntary medium through whom the Victor Bank could make merely colorable transfer of the title to the notes, and thereby be able to avoid a defense which it had reason to believe the maker of the note could rightfully assert in an action brought by itself. To say the very least, the showing is such that a finding by the jury that plaintiff is not a good-faith holder of the note in suit could not be properly set aside as having no support in the evidence.

For the reasons stated, a new trial must be ordered, and the judgment of the district court is therefore *reversed*.