- ANTHON STATE BANK, Appellee, v. JIM BERNARD, Appellant.

**BILLS AND NOTES:** Negotiation—Jury Question as to Bona-Fide
1 Holdership. Testimony fairly tending to show (1) that a negotiable promissory note was executed on the *condition* that the note should not be effective if the corporate stock for which the note was given was not resold within a stated time, in accordance with the payee's contemporaneous agreement, and (2) that the payee never performed and, unknown to the maker, never intended to perform said agreement, constitutes, *prima facie*, a complete defense, which the indorsee can avoid only in case he shows that he had no knowledge of said condition and the fraudulent repudiation thereof.

**BILLS AND NOTES:** Actions—Evidence as to Relations of Parties.
2 On the issue whether an indorsee bank had notice of invalidating infirmities in a negotiable promissory note, testimony is admissible in the form of a written recommendation by the soliciting agent of the original payee, executed by an official of said indorsee bank.

**EVIDENCE:** Best and Secondary—Futile Notice to Produce. One who
3 seeks to introduce secondary evidence of the contents of a material writing need only exercise reasonable effort to seek out the person who he has reason to believe is in possession of said writing. He is under no obligation to demand the production of the writing by one who has apparently no possible control over it.

**BILLS AND NOTES:** Negotiability—Omission of Revenue Stamps.
4 Principle reaffirmed that a negotiable promissory note is not invalidated by the failure to place the Federal internal revenue stamps thereon.

**PLEADING:** Matters Specially Pleadable—Waiver. A waiver must be
5 distinctly pleaded.

**BILLS AND NOTES:** Holders in Due Course—Renewal Note. A de-
6 fense which is pleadable and provable against an original note is pleadable and provable against a note given in *renewal* of the original note, *unless there be some new consideration for the renewal, or unless there be other circumstances amounting to an estoppel.*

**BILLS AND NOTES:**   Holders in Due Course—Nonpayment of Consideration.   A bank which, in buying a negotiable promissory note, simply enters a credit in the payee's bank account, without any showing that the credit has been exhausted, is not a holder in due course.

*Appeal from Woodbury District Court.*—Miles W. Newby, · Judge.

DECEMBER 15, 1922.

ACTION at law on a promissory note.   Directed verdict for plaintiff, and defendant appeals.—*Reversed.*

*H. B. Walling* and *Griffin, Griffin & Griffin,* for appellant.

*John H. Jackson* and *Henderson, Fribourg & Hatfield,* for appellee.

WEAVER, J.—On March 21, 1919, defendant gave his promissory note to a corporation known as the Midland Packing Company, for a subscription to the capital stock of said company, which note thereafter came into the hands of the plaintiff bank, at whose request defendant made the note now in suit as a renewal of the one given to the packing company.   When it was not paid, this action at law was brought, to enforce its collection.   In defense to said action, the answer alleges that defendant's subscription to the stock and the execution of said note were induced and obtained by false and fraudulent representations· on the part of the company and its agents, to the effect that the stock was then worth $125 per share, that notes given in payment therefor were to be used as collateral only, and that said shares would be resold by the company or its agents within four months from said date; and that the note in suit was so given upon the express condition precedent that it should not become effective unless the agreement for resale was performed.   It is further alleged that said representations were false, and known by the company and its agents to be false; but that plaintiff, believing and relying upon their alleged truth, was

induced to make the note. It is further alleged that the president of the plaintiff bank had knowledge of said fraud and was a party thereto, in that he furnished the agent committing it with a letter of recommendation, certifying that such agent was honest and would do as he promised, and that the investment offered by him was safe,—which letter, it was alleged, was given the agent to be used, and was in fact used, by him to persuade the defendant to make such subscription, and was relied upon by the defendant. The plaintiff, in reply, denied the allegations of the answer. On trial to a jury, the evidence being closed, plaintiff moved for a directed verdict in its favor. The motion was sustained, and judgment was entered against defendant on the verdict so returned.

I. On the trial, plaintiff's main case was made by offering the note in evidence. It was admitted without objection, and plaintiff rested without placing any witness on the stand. The defendant's testimony tended to show that, in March, 1919, he was approached by one Chance, agent of the Midland Packing Company, and solicited to purchase shares of stock of the par value of $100 in said company; that, as a result of the negotiation so opened, defendant did undertake to purchase a quantity of such stock, and defendant executed his promissory notes for the price; that to induce such purchase the agent stated and represented that the shares were then worth $125 each, and proposed and offered that, if said purchase was made, he would within four months resell said shares at $125 each, and that in the meanwhile the defendant's note given for such stock would be left in the plaintiff bank. Defendant, having agreed to purchase on those conditions, gave his notes for the price, and received in return from the agent an instrument as follows, written on the back of a Midland Packing Company's blank note:

"I hereby agree to sell for J. N. Bernard 100 shares of Midland Packing Company stock for $125 per share. Above shares to be sold within four months from date. If not sold as above, all notes to be returned to above.

"[Signed] W. M. Chance, Financial Agt.,
"Midland Packing Company."

Chance did not return within the four months, and did not

resell the stock, as agreed.  Later, he did reappear, and repeated his promise to make the sale within a short time.  He seems since to have wholly disappeared.  Defendant's testimony further tended to show that, when Chance first approached him to solicit said purchase, he presented letters of introduction or commendation from different persons; and as a witness, defendant sought to show that one of the letters was written by the president of the plaintiff bank.  Witness did not have the letter and could not produce it, and sought to lay the foundation for stating his recollection of its contents.  Plaintiff's objection to such evidence was sustained, and it was excluded,—a ruling which we shall have further occasion to consider in the progress of this opinion.  There was also evidence to the effect that the agent, Chance, was, at the time the sale was made to defendant, a frequenter of the plaintiff bank, and that the bank knew the nature of the consideration for said note.  No certificate of stock for the shares so purchased was ever delivered to defendant.

The defendant also called the plaintiff's president as a witness.  This witness testified that he bought the note on the day or day after its date; that he paid for it by issuing a certificate of deposit for an amount not named; and that he knew it was given for stock in the packing company.  He was not asked and did not state whether he did or did not know of the agreement for resale of the stock.

The plaintiff offered no evidence other than the note in suit, and at the close of the defendant's case in chief, moved for a directed verdict in its favor.  The grounds of the motion were, in substance, that the evidence was insufficient to sustain a verdict for the defendant; that there is no showing that the bank or its president had any knowledge of the alleged fraud by the agent, Chance, or that either had colluded with or assisted Chance in the procurement of the original note; and that it does not "show by clear, satisfactory, and convincing proof that there was any fraud in the inception of the note which would vitiate it either in the hands of the plaintiff bank or in the hands of the Midland Packing Company."  This motion was sustained by the trial court in a statement made in the following language:

"The Court [addressing defendant's attorneys] :  I don't think, gentlemen, that you have made out a case here.  If this

note was still in the hands of the Midland Packing Company—the question whether you have shown that there are any infirmities in the inception of the note such that would justify you in going to a jury,—but on that the court is not going to decide at this time, because, in his opinion, that is not necessary; but it is clear to the court that the purchaser of this note had absolutely no knowledge of any infirmities in the note, if there were any there; that it is a holder in due course, and they bought the note without knowing of any defects in its inception. I think that the evidence fails to show that the plaintiff bank here, at the time that they purchased this note, had any knowledge at all of the condition of the Midland Packing Company, otherwise than that it was a going concern, and in good financial condition. But, be that as it may, the evidence fails to show that the plaintiff bank had any knowledge of any defects or infirmities in the inception of the note. The motion will be sustained. (Defendant excepts).''

It will thus be seen that the trial court adopted the theory that the burden was upon the defendant to show affirmatively that plaintiff was not an innocent holder in due course of the

1. BILLS AND NOTES: negotiation: jury question as to bona-fide holdership.

original note of which the note in suit is a renewal. That such is the ordinary rule in actions upon commercial paper is to be admitted; but it does not apply when a defect is shown in the title of any person who has negotiated the instrument. Code Supplement, Section 3060-a59; *Keegan v. Rock,* 128 Iowa 39; *Hawkins v. Young,* 137 Iowa 281; *McNight v. Parsons,* 136 Iowa 390; *City Nat. Bank v. Jordan,* 139 Iowa 499; *Iowa Nat. Bank v. Carter,* 144 Iowa 715; *Arnd v. Aylesworth,* 145 Iowa 185; *Connelly v. Greenfield Sav. Bank,* 192 Iowa 876, and cases cited therein. In the absence of any other showing, the possession of the paper by the plaintiff is sufficient to make a prima-facie case of his good faith and right to recover thereon; but when fraud or other defect in its origin is pleaded, and evidence is offered by defendant fairly tending to show alleged fraud or defect in the paper which would constitute a good defense if the action were brought by the payee or by any other person having notice of the facts, the burden then rests upon the plaintiff to make affirmative proof that he or some person

under whom he claims acquired the title as a holder in due course; and the issue so raised is one of fact for the jury, and not of law for the court. See the authorities above cited. It is a good defense to an action on a promissory note that it was delivered conditionally only, and that the condition has not been performed, or that its execution and delivery were induced by fraud or false representations (*McCormick Harv. Mach. Co. v. Morlan*, 121 Iowa 451; *Oakland Cem. Assn. v. Lakins*, 126 Iowa 121; *Mason v. Cater*, 192 Iowa 143; *McNight v. Parsons*, supra); and the negotiation of a note in violation of an agreement with the maker that such note is not to become enforcible until the performance of a condition precedent by the payee, constitutes a defect in the title sufficient to cast the burden upon the purchaser to sustain affirmatively his claim to be an innocent holder in due course (see *McNight v. Parsons*, supra); and if the payee of a note obtained by fraud negotiates it before due, for the purpose of preventing the defense which would have been available to the maker as against him, such act is a fraud sufficient to cast upon the indorsee the burden of showing that he is a purchaser in due course. *Bank of Bushnell v. Buck Bros.*, 161 Iowa 362, 369; *Cox v. Cline*, 139 Iowa 128, 131. Indeed, the statute provides for the right of the maker to plead and show that the delivery of a note was "conditional or for a special purpose only." Code Supplement, Section 3060-a16. Judging by the number of such cases coming up for the consideration of the courts, the scheme for stimulating the purchase of corporate stocks and shares by the public by promising, as a part of the transaction, to take back or resell the same within a short time, is or has been a favorite and often successful method adopted by canvassers in securing subscriptions, with the usual result: that the promise is never performed, the subscriber's money, if he pays cash, being irrecoverable; or, if he gives his note, it promptly turns up in the hands of some indorsee, who may or may not be a holder in due course. If the promise in this case to repurchase or resell the stock within four months, or upon failure so to do, to return the notes, was made with no intention of performing it, and if, instead of returning the notes, payee at once negotiated them, thus disabling himself from making the promised return (and we think a jury

could so find), such conduct was a fraud upon the defendant, constituting a defect in the payee's title; and defendant was entitled to go to the jury upon the question whether the plaintiff had shown itself a purchaser in due course. As said by us in *Cox v. Cline,* supra, the defendant asserts that the note given by him for the stock was obtained by fraud, and has offered evidence in support of his defense, and "if the jury found that allegation to be established, then the inquiry remaining to be answered was not so much whether defendants had succeeded in showing that the note was taken by plaintiff with notice of the fraud, as it was whether plaintiff had succeeded in showing that he took it in good faith and without notice."

As will be seen by the record, plaintiff did not in any manner attempt to show itself a holder in due course, except the prima-facie effect of its possession of the paper and the simple statement of its president that he bought the note soon after its date. The burden which the law imposes upon the indorsee of a note with such defect in its title is in no manner met, and the court could not without error assume such good-faith purchase as a matter of law. The error is doubtless attributable to the failure of the court to note the distinction made by the statute, Code Supplement, Section 3060-a59, between the ordinary action upon negotiable paper by an indorsee, and one in which a defense based on an alleged defect in the title of the payee or indorser is made. See, also, *Selma Sav. Bank v. Harlan,* 167 Iowa 673, 676. The effect of the cited statute is to render no longer applicable many of the earlier precedents on which the plaintiff relies.

II. Referring now to the exclusion of the defendant's testimony as to the contents of the letter alleged to have been furnished Chance by the bank or its president, and displayed by Chance to defendant in negotiating the sale to him of the shares of stock. If it be a fact that plaintiff's president, who thereafter purchased the note, interested himself in aiding Chance, by letter or otherwise, to persuade defendant to make the purchase and give the note, it was material and competent evidence, as bearing upon the question of notice to the bank of the character of the transaction; and the letter, if it had been produced

2. BILLS AND NOTES: actions: evidence as to relations of parties.

and identified, would have been admissible for the consideration of the jury. The letter, as we have said, was not in defendant's possession. If it was in fact written, we may safely presume that it was kept by Chance as a testimonial which might serve him in dealing with others. The defendant's counsel sought in many ways to meet and avoid the plaintiff's objection to prov-

3. EVIDENCE: best and secondary: futile notice to produce.

ing its contents, but the court declined to admit it. It was shown that defendant did not have the letter; that Chance took it away with him; that his present whereabouts were unknown; and that defendant had sought to ascertain where said agent could be found, but without success. In our judgment, the record made in this respect was sufficient to permit the defendant to introduce parol proof of the contents of the letter. The fact that no notice was served upon plaintiff for its production is immaterial; for there was no reason to believe or assume that plaintiff had such letter in its possession or under its control, or could produce it in response to such notice. The letter was traced to the possession of the agent, Chance, and no further; and the effort made to discover Chance and thus reach the paper appears to have been reasonable, and secondary evidence of its contents was admissible.

III. Pending the trial, the defendant had amended his answer by pleading that the note given by him was not stamped, as required by the laws of the United States, and was, therefore,

4. BILLS AND NOTES: negotiability: omission of revenue stamps.

void. At the close of the evidence, and after moving for a directed verdict, but before the ruling thereon, plaintiff presented an amendment to its reply, as follows:

"Motion for Leave to Amend Reply.

"By Mr. Fribourg: At this time, the plaintiff desires, inasmuch as the question as to the note not being negotiable, because it was not stamped at the time of its execution and original delivery, having been presented to the court after the trial of the case commenced, in the last amendment to answer, the plaintiff asks leave to file an amendment to the answer, setting up that any rights which the defendant might have as a matter of law, by reason of *such* claim made in his amendment, have

been waived because the original note in suit was twice renewed for valuable consideration, and without objection or protest, and the defendant is now estopped from claiming any fraud in the inception of the note, or any fraud as to the plaintiff bank.''

In its ruling sustaining the motion for a directed verdict, the court made no reference to this issue, but, as we have seen, based its ruling solely upon the ground that defendant had failed ''to show that the bank had any knowledge of any defects or infirmities in the inception of the note.'' It may here be said that, under our recent rulings, the alleged failure to stamp the note was not a defense to the plaintiff's action, and the court did not err to defendant's prejudice in failing to expressly rule thereon.

IV. It is argued for appellee that defendant, having renewed the note in the hands of the bank, thereby waived his right to assert the defense of fraud in the transaction in which the original note was given. To this contention, it is a sufficient answer to say that, in the original petition on which the case was tried, no waiver was pleaded, and the amendment filed thereto at the close of the trial was made with express reference to the defense predicated upon the omission of the required revenue stamp; and it is a familiar rule that a waiver not pleaded may not be relied upon. In this connection, it is to be remembered that the defense pleaded does not set up plea of rescission, but of fraud, which, if proved and available as against the plaintiff, relieves defendant from liability on the contract. It may also be said that, while there is some confusion in the precedents, it is fairly well settled that, in the absence of circumstances amounting to an estoppel, as between the original parties and transferees who are not bona-fide purchasers a renewal note is open to all defenses which might have been good against the original note. See *House v. Davis*, 60 Ill. 367; *Commonwealth Ins. Co. v. Whitney*, 1 Metc. (Mass.) 21; *Hill v. Buckminster*, 5 Pick. (Mass.) 391; *Hooker v. Hubbard*, 102 Mass. 239, 245; *Wheelock v. Berkeley*, 138 Ill. 153 (27 N. E. 942); 1 Parsons on Notes and Bills 176, 177; Tiedeman on Commercial Paper, Section 180; Daniel on Negotiable Instruments, Section 177. If the title to the note

5. PLEADING: matters specially pleadable: waiver.

6. BILLS AND NOTES: holders in due course: renewal note.

in the hands of the person negotiating it is defective; and the indorsee is, therefore, charged with the burden of showing the good faith of his holding, a renewal of such note, without new consideration and without other elements of estoppel, would not be a waiver of the right of the debtor to assert the defense to which the original note was subject. To quote the language of Chief Justice Shaw in *Commonwealth Ins. Co. v. Whitney*, supra, the note in suit being a renewal of the original note, "the same defense which would be good against the original note may be made to this. If the consideration of that failed, there is no legal consideration for this."

In short, if the renewal would not operate as a waiver or estoppel, had it been made to the payee, it would not so operate as against a holder through a defective title, or at least not until such holder has satisfied the burden resting upon him to prove the good faith of his holding. In addition to the authorities already cited upon this point, see *Hutchins v. Stanley*, 88 Kan. 739 (129 Pac. 1180), and cases there cited; also, *Seager v. Drayton*, 217 Mass. 571 (105 N. E. 461); *Adams v. Ashman*, 203 Pa. 536 (53 Atl. 375, 377). The last cited case is, in many of its features, quite parallel to the one at bar. Whether the plaintiff was a bona-fide holder in due course, and therefore not affected by the alleged fraud in the inception of the note, thus enabling it to enforce the renewal note without reference to the merits of the original, was a question for the jury. The fact that the accrued interest was included in the renewal note did not constitute a new and independent consideration for such renewal.

V. Counsel for appellant make the further point that plaintiff did not show such a purchase of the note as entitled it to be considered a bona-fide purchaser, in that it stands admitted that no money was paid or property delivered in payment for such transfer. As we have seen, the plaintiff's president testifies that the deal was made by him, and that, in consideration for the transfer of the note, the bank executed to the payee its certificate of deposit for an amount not shown. It does not appear that said certificate has ever been paid or redeemed, or that the money which it represents is not now in the bank. The certif-

7. BILLS AND NOTES: holders in due course: nonpayment of consideration.

icate of deposit was simply the evidence of a debt by the bank to the payee. It is not shown to have been negotiable in form, nor the amount thereof, nor whether still outstanding. It is a well settled rule that the giving credit to the payee on his bank account, without a showing that the credit has been exhausted, is not a sufficient showing of consideration to make the bank an innocent purchaser. *City Deposit Bank v. Green,* 130 Iowa 384; *Central Sav. Bank v. Stotter,* 207 Mich. 329 (174 N. W. 142); *Drovers' Nat. Bank v. Blue,* 110 Mich. 31 (67 N. W. 1105); *Farmers' & M. Bank v. Quasebarth,* 104 Kan. 422 (179 Pac. 300); also, comprehensive note on the subject in 6 A. L. R. 273. It is true that these decisions for the most part relate to cases where credit was given by the bank upon the seller's deposit account. The same rule was applied where the buyer of the paper gave his promissory note in consideration of the transfer. *Adams v. Soule,* 33 Vt. 538. Whether any different rule would obtain where a negotiable certificate of deposit is given, we need not consider, as there is here no evidence to that effect.

That the evidence is sufficient to support a finding of a defect in the title of the person negotiating the sale of the paper to plaintiff is not open to doubt. It follows from what we have said that the trial court erred in its holding upon the burden of proof, and in denying defendant the right to go to the jury upon the issues joined. The ruling and judgment appealed from are reversed, and cause remanded for new trial.—*Reversed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.