COMMERCIAL SAVINGS BANK OF ST. LOUIS, MICHIGAN, v. RABER ET AL.

[No. 13,369. Filed November 21, 1929.]

*Charles H. Goggin, McGriff & Bechdold* and *Sturgis, Stine & Sturgis,* for appellant.

*James J. Moran, William H. Eichhorn, Frank W. Gordon* and *John H. Edris,* for appellees.

McMAHAN, C. J.—This is an action by appellant against appellees on a promissory note given by Henry O. Raber, hereafter referred to as "appellee," to Fred G. Stevens Company, and transferred to appellant before maturity. Appellee filed an answer in five paragraphs: General denial; no consideration; *non est factum;* fraud; and failure of consideration. There was a reply of general denial, and that appellant became the owner of the note in due course for a valuable consideration and without notice or knowledge of the alleged fraud. A trial by jury resulted in a verdict and judgment for appellee.

The error assigned is the overruling of appellant's motion for a new trial, the specifications of which are that the verdict is not sustained by sufficient evidence, and that it is contrary to law.

It is appellant's contention that the evidence fails to show that the execution of the note was induced by fraud and that if it be held that the evidence is sufficient to show fraud, appellant has discharged the burden of proving that it became the holder of the note in due course before maturity without any notice or knowledge of any fraud in the execution thereof, and that no facts or circumstances were proved which were sufficient to put appellant upon inquiry or from which bad faith could be inferred.

The note is dated March 3, 1924, and calls for $120, payable $60 March 1, 1925, and $60 March 1, 1926, with interest and attorney fees. At the time the note was executed, appellee resided on a farm near Bluffton. The Fred G. Stevens Company was engaged in the business of farming and breeding stock in central Michigan, about 200 miles from Bluffton. One Arantz, representing the Stevens company, came to Bluffton in March, 1924, for the purpose of putting a Belgian breeding stallion in Wells county. His plan was to get the owners of 60 mares to sign a contract to breed their mares for three years at $20 for the privilege of breeding each mare. Arantz, accompanied by Gene Kyle of Bluffton, called on appellee and told him he was trying to put a good breeding horse in the county; that the horse was at Kyle's barn and was as good as any in the state; that his plan was to get 60 mares; that several farmers had signed; that the stallion had been enrolled, registered and tested; that they guaranteed six standing colts, the price to be $20 for each colt; that appellee was to give his note without interest, the first payment to be in the

fall of 1925, and the other payment in the fall of 1926; that, by the time the first payment became due, he would have one colt and that he could then see that the mare was in foal for the next year and that he would come in September and collect for the first year; that he wanted to reserve the right to fill in all dates so as to have all the notes come due the same time to he could make one trip to collect them. Arantz said the stallion had been tested and that he knew he was a good breeder; that they would keep the notes in their hands and would not sell them.

Appellee, relying upon the representations so made concerning the good qualities of the stallion and that he had been tested and was known to be a good breeder, signed the note with the due dates blank, after which he received a breeding contract. The uncontradicted evidence proves that the stallion was not a good breeder. Stevens sold the stallion in the early summer of 1924, subject to the breeding contracts, and, in the fall of that year, came to Bluffton and had the notes, including the one in suit, with him, and asked Kyle to go with him to a Bluffton bank and see if Kyle could sell the notes. Stevens told Kyle he had tried to sell them in Michigan but could not do so. Kyle, at that time, told Stevens that Arantz had promised the farmers that their notes would not be collectible until the next year and that the due dates were not right.

J. E. Baker, who bought the stallion from Stevens, testified that, between 50 and 85 mares were contracted to be bred in 1924, and that it resulted in but 17 colts; the next year, he bred between 40 and 60 mares, which resulted in between 17 and 25 colts. Vere Nunn, cashier of appellant bank, testified that appellant became the owner of the note in suit January 9, 1925; that he had charge of the transaction in which the note was received; that this note, along, with 75 or 80 other notes,

aggregating about $9,000, was taken by the bank as collateral security for a loan of $3,000; that Stevens executed a note for $3,000, and that he gave Stevens a cashier's check for $3,000; that $1,530 of that note was unpaid; that, when appellant became the holder of the note in suit, the witness had no information or knowledge as to any condition of fact attending the execution of the note; that, when he accepted the note, no other officer of the bank was present or took any part in the transaction; that he knew it was a horse note, but did not know of any agreement between the makers and Stevens, and that he had no knowledge of any statement concerning the breeding qualities of the horse.

Section 11414 Burns 1926, being §55 of the Negotiable Instrument act, Acts 1913 p. 120, provides that "the title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud."

The evidence is sufficient to sustain a finding that the execution of the note was procured by fraud and that it was transferred to appellant in violation of an agreement that the Stevens company would not dispose of the same. This was sufficient to cast on appellant the burden of proving that it was a holder in due course without any notice or knowledge of any fraud in the procuring of the note. See *Farmers Trust Co.* v. *Sprowl, Admx.* (1920), 72 Ind. App. 564, 126 N. E. 81; *McNight* v. *Parsons* (1907), 136 Iowa 390, 113 N. W. 858, 125 Am. St. 265, 15 Ann. Cas. 665, 22 L. R. A. (N. S.) 718. The only witness who testified upon this subject was the cashier of appellant bank, who says he had no knowledge of any fraud. While he says no

other officer of the bank was present when he *accepted* the note in question from Stevens as collateral, there is no evidence to show that other officers of the bank did not know of the circumstances under which the note was executed.

Appellant had the burden on this issue, and this court sitting as an appellate tribunal cannot say as a matter of law that it discharged that burden.

Judgment affirmed.