THE BANK OF BUSHNELL, Appellant, v. BUCK BROTHERS, Appellees.

**Practice:** EVIDENCE: OBJECTIONS: MOTION TO STRIKE. A motion to
1    strike evidence as a whole, which has been admitted without objection and parts of which are proper, should be overruled; as it is incumbent upon a party to make timely and specific objection to testimony.

**Fraud:** PAROL EVIDENCE: ADMISSIBILITY. The rule excluding parol evi-
2    dence tending to contradict a written instrument does not apply where fraud is the gravamen of the action or defense. Thus where plaintiff suing upon a note was not an innocent purchaser, evidence of false

representations concerning a horse for which the note was originally given, was not inadmissible as contradicting a written bill of sale of the horse.

**Evidence:** OBJECTIONS: REVIEW ON APPEAL. Where the answer in an action upon a note given for the price of a horse made no reference to a bill of sale for the animal, but alleged false representations and breach of warranty, the reply simply denying the allegations of the answer, the question of whether the oral warranty sought to be proven conflicted with the written bill of sale was not reviewable on appeal, where the parol evidence was received without objection, except by a motion to strike, and the question was not again raised, either by motion to direct a verdict, requested instruction or motion for new trial.

**Negotiable Instruments:** FRAUD: INSTRUCTIONS. In this action upon a note given for the price of a horse defendant alleged the same statements as constituting fraudulent representations and breach of warranty, and the two questions were coupled together throughout the trial and in the courts instructions. The evidence showed that the note was obtained by fraud and warranted a finding that it was negotiated for the purpose of preventing the defense of fraud. The court instructed that if it was obtained by fraud the burden was upon plaintiffs to show that they acquired it in due course, without notice of fraud or breach of warranty, or other circumstances amounting to bad faith, and that to constitute notice the indorsee must have actual knowledge of infirmity in the note or knowledge of such facts that the taking of the instrument amounted to bad faith. *Held,* that, assuming that a breach of the warranty was the only question in the case, the burden was not on the indorsee to show that he took the note without notice of the breach, and the instruction was not erroneous, under the. Negotiable Instruments Act, as there were other questions in the case.

**Same:** BONA FIDE HOLDER: BURDEN OF PROOF. By the terms of the Negotiable Instruments Act, the title of one who negotiates an instrument is defective when it is done in breach of faith, or under circumstances which amount to fraud, and the burden is upon the indorsee to show that he is a holder in good faith when the title is defective. Thus where the seller of an animal warranted it to be sound when it was not, and shortly before a note taken for the price was due he negotiated it for the purpose of preventing the defense of breach of warranty, this in itself was such fraud in the negotiation of the note as to. cast the burden upon the indorsee to show that he was a purchaser in due course.

Same: BONA FIDE HOLDER: EVIDENCE: INSTRUCTION. Where a note
6  was purchased by a bank operated by a partnership, the testimony
   of its president alone, that he had no notice of any infirmity in
   the instrument, was not conclusive on the subject; as notice to any
   of the other officers would be notice to the partnership as well; and
   the courts instruction to this effect was not an assumption that
   other officers had such notice.

Instructions: SPECIAL INTERROGATORIES. Refusal to submit a special
7  interrogatory as to a matter concerning which there was no dispute
   in the evidence, or concerning a matter which would be a complete
   determination of the case and therefore a request for a special ver-
   dict, was proper.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL,
. Judge.

WEDNESDAY, SEPTEMBER 24, 1913.

SUIT on note. Trial to jury; verdict for defendants.
Plaintiff appeals.—*Affirmed.*

*Henry G. Walker,* for appellant.

*Wade, Dutcher & Davis,* for appellees.

PRESTON, J.—December 29, 1909, defendants executed
their note for $1,000 to Truman's Pioneer Stud Farm of
Bushnell, Ill. Defendants purchased a stallion of said payee,
or rather exchanged a colt of theirs for a stallion. The note
was given for the difference. Plaintiff claims to have pur-
chased the note from the payee April 28, 1909, for $990 and
sues as an innocent holder. Defendants deny that plaintiff
is an innocent holder without notice. They also allege that
the Trumans falsely and fraudulently represented the horse
to be sound; that the horse had stringhalt in one hind leg
and had a disease of long standing in his front feet. The same
facts were plead as a breach of warranty. The evidence is
ample to show such false representations. In fact, defendants'

evidence on this point is not disputed. The errors alleged to have been committed by the trial court are in regard to rulings on objections to evidence, instructions to the jury, and some minor matters.

I. Witnesses Means and McCracken were asked to describe the condition of the horse as they observed it on the day it was delivered to defendants. They gave their testimony without objection, but, when each had concluded his evidence, plaintiff moved to strike the testimony as incompetent, irrelevant, and immaterial, and the motion was overruled. The testimony was for the most part perfectly proper. If any part of it was objectionable, such part should have been specifically pointed out in the motion. It was not error to overrule the objection to the testimony as a whole. *State v. Hasty*, 121 Iowa, 507, 517.

1. PRACTICE: evidence: objections: motion to strike.

Objections should be timely as well as specific. A party ought not to sit by and allow evidence to go in without objection and take his chances on its being favorable to him but, if it should be unsatisfactory, move to strike it out.

II. During the cross-examination of one of the defendants, counsel for plaintiff asked him if a paper, produced and shown to the witness, was a copy of the contract entered into by defendants and Trumans December 29, 1909; witness answered that it was; plaintiff then offered the contract in evidence and moved to strike out the testimony of the witness, as to the representations of Trumans, relative to the soundness of the horse, as incompetent, for the reason that it is an attempt to vary the terms of the written contract by parol evidence. This motion was overruled. We shall later refer to this written contract, which was a bill of sale, and the warranty therein and the question as to whether that matter of the warranty was properly presented to the court. The objection now being considered has reference to false representations. As before stated, the same facts were pleaded as false representations and

2. FRAUD: parol evidence: admissibility.

breach of warranty. The witness had testified in chief, without objection, to all conversations, statements, and representations of the Trumans. Another defendant testified without objection to such statements. The first and only time the written bill of sale was referred to on the trial was on cross-examination of one of the defendants, as above stated. Defendants were not relying on the bill of sale, but their defense was independent of it and based upon fraud. Even as to the warranty, defendants did not rely on the bill of sale or any warranty contained in it but upon oral statements and representations which they also claimed as a warranty. The ruling of the court was correct. The evidence was admissible as to the false representations at least. The rule excluding evidence contradictory of a written instrument does not apply when fraud is the gravamen of the action or gist of the defense. *Humbert v. Larson,* 99 Iowa, 275; *Stanhope v. Swafford,* 80 Iowa, 45; *McNight v. Parsons,* 136 Iowa, 390, 394; *Lavalleur v. Hahn,* 152 Iowa, 649; *Bank v. Young,* 159 Iowa, 375. This would be the rule as between the original parties to the contract and is the rule as between this plaintiff and defendants, unless plaintiff was an innocent holder of the note. There was evidence from which the jury may have found that plaintiff was not such, and they must necessarily have so found in order to find for defendants.

III. It is contended by appellant that instruction No. 7 is erroneous in that it directs the jury to find a warranty without reference to the written contract, covering that feature of

3. EVIDENCE: objections: review on appeal.

the transaction. The theory is that there was a written warranty in the bill of sale and that an oral warranty may not be shown. *Western Electric Co. v. Baerthel,* 127 Iowa, 467, is cited. There is a warranty in the bill of sale by which the stallion is warranted to be an average foalgetter. Defendants do not complain of the horse in this respect because, as they say, up to the time of the trial they had not had the horse long enough to tell. Whether the oral alleged warranty that the horse was

sound, which was also a representation, would conflict with or enlarge the express warranty in the writing need not now be determined, because in our opinion the question was not properly presented to the trial court. In their answer defendants did not refer to or rely upon the writing but did set out oral statements as false representations and breach of warranty. Plaintiff in its reply simply denied the allegations of the answer and did not refer to the written contract, nor was this matter raised in the motion to direct a verdict; no instruction was asked by appellant on this subject; and there was no motion for a new trial. All the evidence as to parol statements went in without objection. It does not appear that the warranty in the written contract was ever called to the court's attention, and, if it was not, the court had the right to rely on the pleadings, the oral testimony, and the theory of the trial. As we have stated, the only reference to this matter on the trial was the objection and motion made during the cross-examination of one of the defendants when the writing was identified. If the point now urged was intended to be relied on in the trial court, it was only fair to that court to call its attention to the matter in some way.

IV. At the close of the evidence plaintiff moved the court "to direct a verdict for plaintiff in accordance with the prayer of plaintiff's petition." The motion was overruled. No grounds or reasons were given. The evidence was sufficient to take the case to the jury.

V. Instruction No. 8 is complained of. So much of it as is necessary to an understanding of the objection to it is as follows:

(8) If you should find that the said note and the signatures of defendants thereto was obtained through the fraud of Truman Bros., or on account of Truman Bros. having warranted the horse to be sound when he was not, then the burden is upon the plaintiffs to show by a preponderance of evidence that they acquired said note in the ordinary course of business, for value,

4. NEGOTIABLE INSTRUMENTS: fraud: instructions.

before maturity, and without notice of such fraud or breach of warranty or of either of these, or of any other fact or circumstances which would amount to actual bad faith on their part should they not make an investigation as to the same before they can recover. . . . To constitute notice of an infirmity in the instrument, the person to whom it is negotiated must have actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith.

In a prior instruction the court told the jury that the execution of the note was admitted, and showed the indorsement to plaintiff, and that plaintiff was entitled to recover unless they found under other instructions it was not entitled to recover, thus giving force to the presumption, in the first instance, that plaintiff was an innocent holder. The remainder of instruction 8, not quoted, defines a holder in due course, etc. The criticism of the instruction, as appellant first states it in his assignment of errors, is that it directs the jury that a simple breach of warranty, without fraud, casts upon plaintiff the burden of showing that plaintiff had no notice of such breach of warranty. We think the language used is not susceptible of such a construction. In argument appellant selects a part only of the language we have quoted and italicizes the words in regard to the warranty only, thus: ''If you should find that the said note and the signatures of defendants thereto was obtained through the fraud of Truman Bros. *or on account of Truman Bros. having warranted the horse to be sound, when he was not, then the burden is upon the plaintiffs* to show by a preponderance of the evidence that they acquired said note in the ordinary course of business for value, before maturity, and without notice of such fraud or *breach of warranty or of either of these.''* He then argues: ''The burden is not on the indorsee to show that he acquired the note without notice of breach of warranty, and the presumption is not that he acquired the note with knowledge of breach of warranty.'' If the only question to be considered

was the breach of warranty, there might be force in the argument. But there is more in the case. The trouble is that the evidence went in without objection, and the same statements claimed to have been fraudulent representations were also claimed as a warranty, and the two (fraud and warranty) were coupled together all through the trial, and the court adopted that theory and did the same thing in this instruction. Counsel ignore the other language in the instruction where the court refers not only to these two matters but to any other fact or circumstances which would amount to bad faith. The instruction must be considered in the light of the evidence.

Counsel quotes only a part of Code Supplement, section 3060-a—55, evidently overlooking the last part of the section. The section reads: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." If the note was obtained from defendants by fraud, or if Trumans negotiated it in breach of faith or under such circumstances as to amount to a fraud, then their title was defective, and, if defective for any of these reasons, the burden was upon plaintiff to show that he acquired it innocently. Code Supplement, section 3060-a—59; *Cox v. Cline,* 139 Iowa, 128, 131; *McNight v. Parsons,* 136 Iowa, 390. One of these cases, if not both, were tried prior to the enactment of this statute, but the statute is referred to in the opinions. There can be no question under this record that the note was tainted by fraud in its inception. But leaving that out of consideration, for the purpose of considering the point now under discussion, we think the evidence was sufficient to show fraud in its negotiation, even though there had been only a question of warranty in the first place. If the Trumans warranted the horse to be sound when he was not, and a short time before the note was

5. SAME: bona fide holder: burden of proof.

due they negotiated it to plaintiff for the purpose of preventing defendants from making their defense against the note, this of itself would be a fraud on defendants. There was evidence to warrant such a finding. One of defendants testified that Truman agreed to not negotiate this note, but, because the testimony showed such agreement was after the note was signed, the court instructed the jury to not consider it, and there is no complaint of this. But there is evidence that one of the Trumans said they always kept their notes; they were depositors in plaintiff bank and lived in the same town in Illinois; the bank never bought any other note of the Trumans, either before or after this one was taken; Trumans did a large business and handled many such notes; when this note was negotiated Trumans said they needed the money; but a few days before they had more than $14,000 on deposit in this bank. Some of it may have been checked out but there was no evidence that it had been. The Trumans guaranteed the payment of this note to plaintiff; they were financially responsible; but plaintiff proceeded against defendants in Iowa. These are some of the circumstances in evidence bearing on this point. None of the Trumans testified. Under the record there was no error in giving instruction No. 8.

VI. The president of plaintiff bank was the only witness testifying for plaintiff to facts tending to show it was a holder in due course. The bank is a partnership; the names of the

6. SAME: bona fide holder: evidence: instruction.

partners and officers were given in evidence. The court instructed in instruction 9, in substance, that the testimony of the president that he had no notice of any defect in the note, or defense against the same, would not be conclusive, and that notice to any of the other officers of the bank of such infirmity, if any, would be notice to the bank. This is a correct statement of the law. *McNight v. Parsons,* 136 Iowa, 390, 397. The instruction does not assume that other officers of the bank had notice. It simply authorized the jury to find that, even though this

particular officer did not have notice, the plaintiff by so show-
ing had not necessarily met the burden resting upon it.

VII. Plaintiff requested the court to submit to the jury
two special interrogatories which was refused. The first was
as to whether plaintiff purchased the note for value before
maturity. There was no dispute in the evi-
7. INSTRUCTIONS: dence on this point, and for this reason there
   special inter-
   rogatories. was no error. *Livingston v. Stevens,* 122
Iowa, 62; *Bank v. Fuel Company,* 89 Iowa, 618, 626; Clement-
son,. Special Verdicts, 77. The other interrogatory was as to
whether plaintiff purchased the note in good faith without
notice of fraud. This was, in reality, the only disputed issue
in the case. It was put in issue by the pleadings. The defend-
ants' evidence as to the false representations and warranty
was not disputed by any one. An answer to this question
would be a complete determination of the case and was nec-
essarily determined by the general verdict. If the interroga-
tory had been submitted and answered yes, the verdict would
be for plaintiff; if no, then under the undisputed evidence the
verdict would be for defendants. So that it was a request for
a special verdict. There was no error in refusing to submit
it. *White v. Adams,* 77 Iowa, 295, 298; *McQuire v. Railway,*
138 Iowa, 664, 667, 38 Cyc. 1914.

No prejudicial error is shown, and the judgment is *Af-
firmed.* All the Judges concur.