INDIANA WAGON COMPANY, Appellee, v. H. VAN DE POL, Appellant.

BILLS AND NOTES: Holders in Due Course—Evidence. Evidence reviewed, and held to present a jury question on the issue whether plaintiff was a holder in due course.

*Appeal from Wapello District Court.*—SENECA CORNELL, Judge.

FEBRUARY 6, 1918.

ACTION upon promissory notes. Trial to a jury. At the close of the testimony, the court directed a verdict for the plaintiff, and judgment was entered upon the verdict. The defendant appeals.—*Reversed.*

*Thomas J. Bray,* for appellant.

*Gillies & Daugherty,* for appellee.

PRESTON, C. J.—The suit is based on two notes, one for $600 and the other for $1,000, dated August 3, 1915, payable to T. L. O'Neil, of La Salle, Illinois, due April 3, 1916. The plaintiff claims to be a holder in due course, and that it purchased the notes from the original payee on August 3, 1915, but, by amendment to petition, says the date was August 30th, and before their maturity, and for a sufficient consideration. The negotiations for the transfer of the notes were between O'Neil, the payee, and one Carpenter, who was president of the plaintiff corporation, and who was acting for the plaintiff. The consideration alleged to have

been paid by plaintiff for the notes was a check for $315 to O'Neil, and paying $1,072 to a bank in Indiana, to take up notes due from O'Neil to the bank, and extending an advance credit for merchandise for the balance of the face value of the notes.

The plaintiff is a corporation, engaged in the manufacture and sale of farm wagons, selling mostly to jobbers. O'Neil, the payee in the note, was engaged in the manufacture and sale of implements, and was in the habit of selling implements and taking notes in settlement for them. Defendant's sons were engaged in the retail implement business in Eddyville, Iowa. Defendant had signed notes as surety for his sons. The notes in suit are signed by Jacob Van De Pol and H. Van De Pol.

The execution of the notes is admitted by defendant, but he alleges as a defense that certain false representations were made by the payee to induce the execution of the notes, and that there was fraud in the inception, and want of consideration; denies that plaintiff was an innocent purchaser in due course for value, and denies that plaintiff took the notes without notice of his defense thereto, or any infirmity therein, or defect in the title of the person negotiating it. It is further alleged by the defendant that, if plaintiff is the owner of the notes, it was cognizant of the fraud practiced by the payee, T. L. O'Neil, in the procurement thereof; that, about March 13, 1915, the O'Neil Implement Company, through its agent, T. L. O'Neil, sold Van De Pol Bros., of Eddyville, buggies and other merchandise of the value of $472.97, and other merchandise of the value of $472.80, receiving in payment therefor credit orders for said sums, signed by Van De Pol Bros. and the defendant herein; that, about May 1, 1915, the said O'Neil Implement Company, by its agent, T. L. O'Neil, sold said Van De Pol Bros. other merchandise, of the value of $2,320, receiving in payment therefor a note, of even date,

of like amount, signed by Van De Pol Bros. and this defendant; that, about September 1, 1915, and a short time before all the obligations referred to became due, the said T. L. O'Neil, payee in the notes in suit, for himself and for the O'Neil Implement Company, represented to Van De Pol Bros., by letter, that they desired to use the notes just referred to as collateral; that they could not use the same after maturity; and, if the obligations could not be paid when due, the said O'Neil Implement Company and T. L. O'Neil would disclaim payment of said obligations, provided Jacob Van De Pol and H. Van De Pol, the defendant, would execute to T. L. O'Neil, or the O'Neil Implement Company, their joint notes for $3,200, to mature at later dates; that said T. L. O'Neil, for himself, or for the Implement Company, would take up the three obligations before referred to, and surrender the same to the defendant and Jacob Van De Pol; that, relying on such representations, the defendant and Jacob Van De Pol executed and mailed to said O'Neil and the Implement Company their four joint promissory notes, two in the sum of $600 each and two in the sum of $1,000 each, in which the notes herein sued on are included; that, subsequent thereto, the said O'Neil and the Implement Company wrongfully and fraudulently failed to take up the obligations as agreed; that said obligations were thereafter presented for payment by third parties, in violation of the representations and agreement, and defendant was compelled to pay off all said obligations; and that the two notes sued on are two of the four notes making up the $3,200; that the representations and agreements were false, etc.; that the consideration of the notes sued on has failed, and they are without consideration; that plaintiff took the notes, if at all, with knowledge of the facts in regard to the procurement of the same.

There was evidence to support the allegations of the answer, and it is conceded by counsel for plaintiff that the

evidence was sufficient to take the case to the jury on the question of fraud in the inception, and likewise that the notes were negotiated by the payee, O'Neil, in breach of the agreement. This leaves, then, as the only question for determination, whether, under the evidence, the case should have gone to the jury on the issue in regard to plaintiff's being a bona-fide holder in due course, without notice. The court having directed a verdict, the evidence must be considered in the light most favorable to the defendant.

It is contended for appellant that:

When the evidence shows that a note has its inception in·fraud and deceit, the burden of proving that the owner of the note sued upon obtained the same in good faith, in the usual course of business, and for a valuable consideration, is placed upon the person making this claim. They cite *Bank of Bushnell v. Buck Bros.,* 161 Iowa 362; *Merchants Nat. Bank v. Grigsby,* 170 Iowa 675, 684; *Perry Sav. Bank v. Fitzgerald,* 167 Iowa 446; *Stotts v. Fairfield,* 163 Iowa 726, 739; *In re Estate of Philpott,* 169 Iowa 555; *Iowa Nat. Bank v. Carter,* 144 Iowa 715; *McNight v. Parsons,* 136 Iowa 390; *Arnd v. Aylesworth,* 145 Iowa 185; *Waukee Sav. Bank v. Jones,* 179 Iowa 261.

There seems to be no dispute between counsel as to this legal proposition. It is contended also that plaintiff has failed to show that it took the note sued upon in good faith, for a valuable consideration, in usual course of business, and without notice of the defect in the title. *Robertson v. U. S. Live Stock Co.,* 164 Iowa 230; *Bank of Bushnell v. Buck Bros.,* 161 Iowa 362, 370.

On the other hand, it is contended by plaintiff, and they cite authorities to the familiar doctrine, that, where plaintiff shows a clear right to recover, and the defendant has shown no defense, the court may direct a verdict for the plaintiff. They cite further Section 3060-a56, Code Supplement, 1913, to the proposition that, to constitute notice

of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith; and contend that, under the last quoted section, though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title will prevail.

They cite further, Section 3060-a57, Code Supplement, 1913, to the proposition that a holder in due course holds the instrument free from any defect of title in prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof, against all parties liable thereon. They concede that, under the holding of the case of *Robertson v. United States Live Stock Co.,* 164 Iowa 230, 234, the uncontradicted denial of notice by the holder is not sufficient to justify the direction of a verdict; yet the facts and circumstances supporting the denial of notice may be such as to warrant such direction. We have held that, though the evidence may not be such as to show bad faith of the party to whom the note is negotiated, still, the evidence may not be sufficient to show good faith. After a careful examination of the record, we are of opinion that the case should have been submitted to the jury on this question.

Of course, no one circumstance will determine the question, but all the facts and circumstances in the case must be considered. We shall refer to some of the circumstances relied upon by appellant. In the first place, there is the circumstance as to whether plaintiff obtained the notes in due course of business. Its business was not that of buying commercial paper, as a bank or the like; its business was that of manufacturing and selling wagons. Plaintiff did not pay money for the note outright,—at least not

all of it; and there are some discrepancies in the testimony of O'Neil, whose business relations with the plaintiff company were somewhat intimate, and who attended the trial and testified, and who came from a distance. Mr. Carpenter, plaintiff's president, and the officer of plaintiff wagon company to whom O'Neil negotiated the notes, testified that he had no notice, from anything occurring in the transaction of the negotiation of the note, that there was any defense, or any defect in the title. But there are some other circumstances in his testimony which we think are proper to consider, with the other circumstances in the case, some of which have been referred to, and some others will be referred to. He testifies that plaintiff got the two notes in suit from O'Neil on August 30, 1915; but there is a discrepancy of several days between the testimony of this witness and O'Neil as to this date. Carpenter also says that, in the purchase of these notes, a check was given to the bank for some obligation of the O'Neil Implement Company's on that date, which was in some way connected with the transaction of the transfer of these notes to plaintiff; that plaintiff took up some notes of the O'Neil Implement Company's in consideration of the transfer to plaintiff of these notes; and that the amount of the notes so taken up was about $1,072. But the details of the matter of taking up the notes are not given, and the notes alleged to have been taken up were not produced. He says, also, that O'Neil was credited, on plaintiff's books, for future goods that he might get, and that the amount of this credit was several hundred dollars; but only two items are given for goods sold after that, amounting, for two separate shipments, to $149.65. He says he did not try to ascertain the financial condition of the makers of the notes sued on; that he knew how to do that, but the only statement in regard to them was received from the O'Neil Implement Company. He says further that he notified O'Neil that there was go-

ing to be a defense to these notes, and that plaintiff's attorneys in this action were suggested by O'Neil. There was another check for $315 given by plaintiff to O'Neil, which plaintiff claims was in part payment for the notes in suit. O'Neil testifies, in regard to the negotiation of the notes, that he owed plaintiff some money, and he believed they cleared up the account and gave him a check for some money; and he thinks he had a credit balance left, but says he does not remember whether he owed them notes or an open account at the time. Appellee argues that the alleged fraud could only have been learned by it from defendant or his son or O'Neil, and they argue that there is no circumstance in evidence which would cast a suspicion upon the transaction of the negotiation of the notes. In argument, they refer to the evidence from their viewpoint, and argue that there is no conflict in the evidence, and that no other inference could be drawn from the evidence than that plaintiffs were acting in good faith, and were innocent holders. But we think the circumstances we have enumerated—and there are others in the record—are such that a contrary inference might be drawn by a jury from the circumstances proven.

Without going further into detail in regard to the evidence and circumstances, it is our conclusion that, under the entire record, a case was made for the jury. This being so, the cause is reversed and remanded for another trial.— *Reversed.*

LADD, EVANS, and STEVENS, JJ., concur.