Mary Little, Appellee, v. C. F. Maxwell, Appellant.

NEGLIGENCE: Evidence—Sufficiency. Evidence held sufficient to
1    sustain a verdict against defendant for damages by reason of
     the negligent operation of an automobile.

EVIDENCE: Opinion Evidence—Physical Condition of Injured Per-
2    son—Qualification of Expert. The opinion of a physician as to
     the physical condition of an injured person is not necessarily
     erroneous to the extent of prejudice because based, in some de-
     gree, on information obtained from *hearsay* sources.

TRIAL: Reception of Evidence—Motion to Strike—Excessive Mo-

tion. Motions to strike the entire testimony of a witness which is in part competent and in part incompetent, are properly overruled.

TRIAL: Instructions—Form, Requisites, and Sufficiency—Duties of Pedestrians, Etc., on Public Streets. A request for a specific instruction as to the relative duties of pedestrians and the drivers of conveyances on public streets is sufficiently met by a general line of instructions from which the jury could draw no conclusion other than that both said parties had the right to use the street, and what their relative duties were in the exercise of such use.

TRIAL: Instructions—Sufficiency—Correct but Not Explicit. Instructions which are correct but not explicit are sufficient, in the absence of a request for a more explicit instruction.

TRIAL: Verdict—Excessiveness—$5,750. Verdict for $8,750, reduced by the trial court to $5,750, for personal injury, sustained. Plaintiff was run over by an automobile, received a severe nervous shock, suffered numerous bruises, had the mesentery torn loose, in part, from walls of the abdomen, suffered an operation by reason thereof, and some possibility existed of some of her injuries' being permanent.

*Appeal from Polk District Court.*—THOS. J. GUTHRIE, Judge.

MARCH 18, 1918.

PLAINTIFF was injured by being struck and run over by defendant's automobile, on or about September 23, 1916, while attempting to cross Locust Street at its intersection with Tenth Street in the city of Des Moines. At the time of the accident, she was going south on Tenth Street, on the west crossing. The defendant, at the time of the collision, was proceeding east in his automobile, on Locust Street. The right fender of defendant's car struck plaintiff, and pushed or knocked her to the pavement, one wheel of the car passing over her body near the waistline, and probably another over her ankle. The evidence, however, is in conflict upon this point. Plaintiff was rolled underneath the car to a point about the center of the intersection, where she

was picked up and carried into a near-by building, after which she was taken to a hospital, where, a day or two later, an operation was performed. She remained in the hospital about sixteen days, and then went to her home, in the northern part of the state. The jury returned a verdict in her favor for $8,750, which was reduced to $5,750 at the time the court ruled on defendant's motion for a new trial.—*Affirmed.*

*Strock, Wallace & McConlogue,* for appellant.

*Thos. A. Cheshire,* for appellee.

STEVENS, J.—I. It is urged on behalf of appellant that the evidence fails to establish negligence on his part, but that it appears therefrom that plaintiff was guilty of contributory negligence causing her injuries.

1. NEGLIGENCE: evidence: sufficiency.

Immediately preceding the accident, plaintiff and a companion started from the north side of Locust Street on the west crossing thereof, at its intersection with Tenth Street, to go to the south side thereof; and, when part of the way across, the driver of an automobile, some distance to the west, sounded his horn, and plaintiff's companion returned to the curb on the north side of the street, and plaintiff continued south until she arrived near the center of the crossing, when she apparently became confused, or frightened. The evidence is in some conflict as to what she then did, some of the witnesses testifying that she turned back and forth two or three times, and she testifying that she hesitated only, and then went on.

A man by the name of Snyder, who gave the warning above referred to, was proceeding east in an automobile on the south side of Locust Street between Eleventh and Tenth, and, observing the apparent fright or confusion of plaintiff, stopped his car, 30 or 40 feet west of the crossing. There was another car between this point and the south curb. The defendant was going east, in the rear of the

Snyder car, and, when the latter stopped, he turned his car to the north, for the purpose of passing on the north side of the Snyder car. Snyder testified that, when the defendant passed his car, he speeded up, and that his car was being operated at from 10 to 20 miles per hour when it struck plaintiff. Snyder was about 50 feet west of Tenth Street when he first observed defendant, who, after passing him, turned his car slightly in front of the Snyder car. Plaintiff, according to the testimony of this witness, at the time she was struck, was a little south of the center of Locust Street, on the east side of the west crossing. She was knocked or pushed down by the right fender of defendant's car, and, falling underneath the same, was rolled over several times, one wheel of the automobile, as above stated, passing over her body near the waistline; and plaintiff testified that another wheel passed over her ankle. Other witnesses testified that defendant's car was moving at 18 or 20 miles per hour; and one witness, called on behalf of defendant, testified that same was going less than 10 miles per hour. Several witnesses testified that the car was stopped east of the intersection and near the center of the block, and one witness placed it at about 30 feet east of the intersection; while defendant said he stopped on or near the east side of the intersection.

There was evidence from which the jury might have found that, at the time the car struck plaintiff, it was being driven at a dangerous rate of speed. She was picked up a little east of the center of the intersection, in a dazed and, apparently, partially conscious condition. The evidence further showed that defendant saw plaintiff on the crossing and that he sounded his horn, and further tended to show that he observed her apparent fright or confusion. He testified that he reduced the speed of his car, when he approached the crossing, and that:

"I saw Miss Little and the other girl as soon as I turned

out from behind Mr. Snyder's car, and did not see them before, because his top was up. When I first saw them, they were substantially in the center of the street, walking towards the south. I gave them the horn. They looked up, and saw me coming, and both took a step or two back, and I proceeded along towards the east, or southeast. I went to get square with that south side of the street, and directly in front of Mr. Snyder's car; then one of the girls, Miss Little, suddenly broke away from her companion, and started in a southeasterly direction. I slowed the car down, and I think I blew the horn again, slowed the car down, and I then probably traveled half the distance up to the crossing from where I started out from behind Snyder's car, and she stopped again, and stepped a pace or two out of the line of my car, and looked at me, as much as to say, "Go on," and the same as any other pedestrians do when they are waiting for the car to pass and start on, and she then suddenly changed her mind, and started to run in a southeasterly direction, and I slowed the car down again and swung it to the northeast as far as I could, in an effort to miss her, but the right front fender caught her, and her dress might have caught in the spring, or she would have missed the car entirely, and kind of pushed her down, and I felt the car upon her."

The defendant had equal opportunity with the driver of the Snyder car to observe the apparent fright or confusion of plaintiff; and the jury may well have found, from the evidence, that he did observe same, and, in the exercise of ordinary care and prudence, would have stopped his car until she was out of danger.

In our opinion, the evidence does not convict plaintiff of contributory negligence. She was clearly confused, and whatever uncertainty is shown in her conduct was due to that fact. The evidence is sufficient to sustain a verdict against the defendant, and we cannot disturb it upon the

ground of plaintiff's contributory negligence, or that negligence on the part of the defendant was not established.

II. Expert witnesses called on behalf of plaintiff were examined as to her physical condition at the time of the trial, and were also required to answer certain hypothetical questions. Objection was urged by counsel to parts of the testimony of each of these witnesses; and, either at the close of their testimony or at the close of plaintiff's evidence, defendant moved that same be stricken from the record. The motions were overruled, and error is predicated upon this ruling.

2. EVIDENCE: opinion evidence: physical condition of injured person: qualification of expert.

None of the expert witnesses whose testimony defendant sought to have stricken saw plaintiff until shortly before the trial. The physical examination made by them was supplemented by information obtained in answer to questions propounded to her and a member of her family, touching her injuries and the effect thereof, and it is contended by counsel for defendant that their conclusions and answers to the hypothetical questions propounded were based upon the information elicited by questioning plaintiff and her father, and not upon knowledge acquired by the examination made, and were, therefore, based upon hearsay and self-serving declarations of plaintiff, and were wholly incompetent.

We held, in *Switzer v. Baker*, 178 Iowa 1063, that the opinion of an expert, based upon information obtained from third persons, or from statements by the patient not made in the course of treatment, is incompetent; and numerous authorities are cited to sustain this holding. Some of the questions propounded in this case come dangerously near to a violation of the above rule, and this is particularly true of a part of the testimony of Dr. Ely; but each of the several witnesses described plaintiff's condition, and some of the conclusions expressed by them were not unfavorable to the

defendant, and, on the whole, we are convinced that no prejudice resulted to defendant from this testimony.

3. TRIAL: reception of evidence: motions to strike: excessive motion.

The motion to strike did not point out or specify the particular portion of the testimony to which objection was urged, but included all of the testimony of each witness, much of which was entirely proper and competent. The motion was not sufficiently specific. *Reynolds v. Pray*, 148 Iowa 213; *McDermott v. Hawkeye Commercial Men's Assn.*, 158 Iowa 544; *Bank of Bushnell v. Buck Bros.*, 161 Iowa 362.

4. TRIAL: instructions: form, requisites, and sufficiency: duties of pedestrians, etc., on public streets.

III. Counsel for defendant requested the court to instruct the jury that the right to the use of the streets by pedestrians and moving vehicles is equal, and that each must exercise such right with reasonable regard for the convenience and safety of others.

The court refused the requested instruction and this point was not covered in specific terms in its instructions. Defendant was entitled to have the jury instructed as to the relative rights of pedestrians and the drivers of moving vehicles to the use of the street, and the court should have given the requested instruction; but, considering the instructions as a whole, the refusal to give the same was not, in our opinion, prejudicial.

The petition contained an averment that the defendant was negligent in not stopping his car behind that of Snyder until plaintiff, who was upon and in possession of the crossing, had passed over same. It is urged that, as this language was quoted in the statement of the issues to the jury, without a proper instruction as to the relative rights of the parties to the use of the street, the jury may have been led to believe that a pedestrian who has entered upon a street crossing is entitled to the exclusive use thereof until same has been entirely crossed.

The court, in its instructions, however, defined the respective duties of plaintiff and defendant, and the only possible inference therefrom was that both had rights upon the streets which must be exercised with due regard for the safety of each other.   For example, in its sixth instruction, the court told the jury that it was the duty of the defendant to operate his automobile in a careful and prudent manner and at such a rate of speed as not to endanger the life and limb of any person, and that, upon approaching a pedestrian upon the traveled portion of a highway, it was his duty to slow down, and give warning or signal of his approach; in another, that the statute requires the driver of an automobile passing a vehicle from the rear to pass to the left, and otherwise to travel upon the right-hand side of the street, as near to the curb as the street will permit; and in still another, that it was the duty of the plaintiff, in passing upon and over the street, to exercise ordinary care for her own safety, and that she could not recover unless the jury found, by a preponderance of the evidence, that there was no negligence on her part contributing to the injury, and further, that it was her duty, in passing over the street, to use her senses of sight and hearing to ascertain the approach of automobiles, and to act carefully and prudently at all times, considering the circumstances surrounding her.   The jury could have drawn no other possible inference from these instructions than that both had the right to the use of the street; and the relative duty of each in the use thereof was specifically pointed out.

The instructions made it sufficiently clear that both had substantially equal rights to the use of the street, and defendant could have suffered no prejudice by the refusal of the court to give same.

IV. The court instructed the jury upon
the duty of one confronted with sudden peril,
and complaint is made of the instruction
given, for the reason that it did not fully
cover the law upon this point. It is conceded by counsel that, so far as stated, the law of the instruction is correct. No proper instruction covering this point was asked by counsel, and we think the instruction fairly complete, and not subject to serious objection.

5. TRIAL: instructions: sufficiency: correct but not explicit.

V. It is also contended by counsel that
the verdict of the jury was excessive, and the
result of passion and prejudice. Defendant's
motion for new trial was overruled, on condition that plaintiff remit $3,000 of the verdict.

6. TRIAL: verdict: excessiveness: $5,750.

That plaintiff suffered a severe injury, necessitating a serious operation, is conceded. It is contended, however, that no permanent injury resulted, and that she suffered no loss of earnings, or earning capacity, and incurred less than $500 medical and hospital expense, is now fully recovered from her injuries and consequent operation, and possessed of good general health.

The physicians who attended her and the surgeon who performed the operation testified that she received a severe nervous shock; that her body was covered with bruises; that there was a large contusion on her head; that the mesentery which is attached to the posterior wall of the abdomen and extends over the bowel and holds it in place was torn loose from its attachment for two or three inches. There was a quantity of dark blood in the region of the injury, and considerable bleeding from the laceration of the mesentery. The operation consisted of an incision in the abdomen, about four inches in length, the removal of clots of blood from the abdominal cavity, and the suturing of the laceration of the mesentery. On account of the hemorrhage, a drainage tube was inserted in the wound. Several ex-

pert witnesses testified that adhesions follow the use of a
drainage tube, and, in this case, might produce strangula-
tion of the intestines, and will be, to some extent at least,
annoying and uncomfortable to the plaintiff.    The danger
from this condition does not, from the testimony, however,
appear to be greatly apprehended.    Nevertheless, the ques-
tion was for the jury.    Plaintiff testified that she suffered
pain in her shoulder and other injuries; that she has since
been nervous, and unable to sleep as well as before the ac-
cident.    Her general health was shown to be otherwise good.

While the verdict was large, the internal injury suffered
and the operation performed to relieve the same were seri-
ous, and involved the hazard which generally attends ab-
dominal operations.

The question whether the verdict, as returned by the
jury, is indicative of passion or prejudice on its part, re-
quires notice.    The circumstances surrounding the injury
were somewhat calculated to influence the belief that defend-
ant was reckless in the operation of his automobile.    The
prudence of the driver of the Snyder car, in stopping same at
a safe distance to permit plaintiff to clear the crossing,
naturally gave an unfavorable appearance to the effort of de-
fendant to continue, while the plaintiff, in a state of con-
fusion or bewilderment, was hesitating what course to pur-
sue upon the crossing.    There was evidence from which the
jury may have found that the defendant saw the confusion
of plaintiff, and that ordinary care required him to promptly
stop the automobile, thereby insuring plaintiff's safety.
There was evidence from which a conclusion might be drawn
that plaintiff's injuries were, to some extent, permanent, and
that, on account thereof, she would be long threatened with
serious and dangerous consequences.    The evidence was suf-
ficient to justify a verdict for the plaintiff, and we do not
think the record sustains appellant's contention that the
jury was influenced by passion or prejudice in reaching its

verdict. The court, who saw and heard the witnesses testify, reduced the verdict to $5,750, and we do not feel warranted in further reducing it.

Other alleged errors urged by counsel have been discussed in argument, but they do not present questions of controlling importance, and we therefore omit discussion thereof. The record is somewhat voluminous, but we have examined it with care; and, while it is not entirely free from error, nothing of a prejudicial nature appears therein, and the judgment of the court below is—*Affirmed.*

PRESTON, C. J., LADD and GAYNOR, JJ., concur.