INDIANA WAGON COMPANY, Appellee, v. H. VAN DE POL,
Appellant.

**TRIAL:** Instructions—Applicable to Pleadings and Evidence. A liti-
gant may not complain of an instruction drafted in harmony with
an allowable construction of the party's pleading, and with the
evidence, and, withal, advantageous to such complainant.

**BILLS AND NOTES:** Holders in Due Course—Evidence of Custom. A
plaintiff who claims to be a holder in due course of a negotiable
promissory note may, in making full disclosure of the circumstances,
reasons, and motives attending the purchase of the note, testify
whether he has competent knowledge as to the general custom exist-
ing in his line of business to accept notes from customers in settle-
ment of the accounts of the latter.

*Appeal from Wapello District Court.*—D. M. ANDERSON, Judge.

FEBRUARY 10, 1921.

SUIT upon promissory notes, the plaintiff being an alleged
holder in due course, and not the payee thereof. The defense
was that the notes were obtained from the defendant by the
payee by false and fraudulent representations, and that the
plaintiff was not a good-faith holder in due course. There was
a trial to a jury and a verdict for the plaintiff. Judgment being
entered thereon, the defendant has appealed.—*Affirmed.*

*Thomas J. Bray* and *John E. Lake,* for appellant.

*Gillies & Daugherty* and *Roberts & Webber,* for appellee.

EVANS, C. J.—The case was before us upon a former ap-
peal. *Indiana Wagon Co. v. Van de Pol,* 182 Iowa 763. The
payee was O'Neil Implement Company, which was a trade name
used by one O'Neil. Defendant introduced evidence tending to
show that O'Neil had obtained the notes sued on by fraudulent
representations, whereby the burden was cast upon the plaintiff
to prove affirmatively that it was a holder in due course. The

evidence for defendant tended to show that, at the time the notes in suit were executed, the makers were indebted to O'Neil for a like amount upon obligations previously given, and which were about to mature. In advance of the date of such maturity, O'Neil wrote to the defendant, suggesting that, if payment of the existing indebtedness at maturity would be inconvenient, he and his comakers could execute new notes for the indebtedness to mature at a future date, whereupon the old notes would be. surrendered. The new notes were executed and sent to O'Neil. He failed to return the old notes. On the contrary, they were presented at maturity for collection by a holder thereof, who claimed to be such in due course. After some parleying, and after a further promise by O'Neil that he would return the notes in suit if the makers would pay to the holder thereof the old notes, the makers did pay to the holder thereof the past due notes. In the meantime, O'Neil had negotiated the new notes to the plaintiff herein. The grounds of reversal laid by appellant are directed largely to the instructions of the trial court.

I. One of the instructions given by the trial court was as follows:

"If you find by the preponderance or greater weight of the

1. TRIAL: instructions: applicable to pleadings and evidence.

evidence in the case that, on or about September 1, 1915, the said T. L. O'Neil represented to defendant and his comakers on the orders and note amounting to about $3,200, and which were then about due, that, if defendant and his comakers on said note and orders would execute and deliver to him their notes for $3,200, that he would give them an extension of time upon said indebtedness, and if you find that the defendant and his comakers on said orders and note believed said representation to be true, relied upon them, and were induced thereby, and otherwise would not have done so, made, executed, and delivered to said T. L. O'Neil their notes for $3,200, among which were the notes in suit, and if you find that the said T. L. O'Neil did not then have the said orders, and that the same had been transferred to innocent purchasers, and that the same were afterwards presented to defendant, and he was obliged to take up and pay the same, and if you further find that the representations and statements so made by T. L. O'Neil to the defendant and his comakers upon said

orders and note were false, and known by said O'Neil to be false, and were made by him for the purpose of cheating and defrauding the plaintiff, and did have that effect, then you would be justified in finding that the said notes for $3,200, including the notes in suit, were obtained by false and fraudulent representations, and that the consideration therefor wholly failed.''

This instruction is assailed upon the ground that it is an incorrect statement of the position of appellant, in that it limits the consideration of the jury to the question of whether the older note had been transferred to an *innocent* purchaser before the making of representations by O'Neil that he would return the note when the new notes were signed. The argument is that the appellant, as defendant, nowhere alleged that the purchaser of the old note was *innocent*, and that the instruction, therefore, put an undue burden upon him.

The answer of the defendant would fairly bear the construction which the court put upon it. The construction thus put upon it was favorable, and not unfavorable, to the defendant. In order to sustain a defense of fraudulent representations, it was essential that the defendant should have pleaded and proved the very allegations thus set forth in the instruction. If O'Neil had not transferred the notes at the time he made the representations, such representations would not have been false. All the evidence tended to show that he had made the transfer. The fact that the defendant paid the note in the hands of the holder was sufficient presumptive proof in his behalf that he had paid the same to an innocent purchaser. The court construed the defendant's pleadings in the light of his evidence, and construed it in such a way as to save his defense. We think, therefore, that the criticism of the instruction is not well taken. Substantially the same criticism is directed against several other instructions. What is here said is likewise applicable to these.

II. The form of certain instructions wherein the burden of proof was laid upon the plaintiff is criticized as being incorrect. Without setting out these instructions, it is sufficient to say that they conform strictly to the letter of the Negotiable Instruments Act, and are, in a large part, literal quotations therefrom. We find no error in that regard.

III. Over the objection of the defendant, the court permitted

the witness Carpenter to testify as to the general custom of manufacturers in accepting notes from customers in settlement of their accounts. The evidence was that such custom was in vogue. The evidence thus admitted is assailed by appellant as being wholly incompetent. The witness Carpenter was the president of the plaintiff company. He transacted the business which resulted in the negotiation of the notes in suit by O'Neil to the plaintiff company. Neither his business nor the business of the plaintiff company primarily involved the purchase and sale of notes, and that fact appeared in evidence. Plaintiff was a manufacturer of wagons. O'Neil was an implement dealer. He was one of the customers of the plaintiff, and was indebted to it. The notes in suit were turned out in payment of such indebtedness. It was permissible to the witness, as president of the company, in meeting the burden of proof as to good faith, to disclose fully the circumstances of the purchase and his reasons and motives for making the purchase. His testimony at this point was, in substance, that it was the custom of manufacturers to take from customers in settlement the notes which they held of their customers, and then to rediscount such notes with their local banks. We think such evidence bore fairly upon the good faith of the plaintiff, and tended to support the burden cast upon it under the law. Without dealing in further detail with the errors assigned, it is sufficient that what we have already said is decisive of all points raised. We have gone through the instructions of the trial court with care, and discover therein no prejudicial error. As to the larger merits of the case, which are largely discussed, we are precluded by the verdict of the jury.

*2. BILLS AND NOTES: holders in due course: evidence of custom.*

We find no error in the record that would justify our interference with the judgment entered. The judgment below is, therefore,—*Affirmed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.